JOSEPH E. ROBERTS *vs.* ANHEUSER BUSCH BREWING
ASSOCIATION.

Suffolk,   January 17, 18, 1912. — April 1, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Food,* Injurious substance sold for. *Deceit. Negligence. Practice, Civil,* Report
to full court.

If the manufacturer of a preparation of malt represents as of his own knowledge
by public advertisements that it is a healthful mixture, free from all injurious
substances, beneficial to women and children and to those needing strength and
nourishment, and puts the mixture on the market, whereby a bottle of it comes
through a wholesale dealer to a druggist who sells it to a customer, who is in-
duced to buy it by the representations contained in the manufacturer's adver-
tisements, and if the contents of the bottle, free from outside contamination and
used in the way intended by the manufacturer, cause ptomaine poisoning of
the customer's wife and child, the customer has a right of action in tort against
the manufacturer for loss of services thus caused.

In an action of tort the presiding judge ordered a verdict for the defendant and
reported the case for determination by this court, stating that he did so "under
the usual agreement," and that "It is agreed that if judgment should be entered
for the plaintiff it is to be for the sum of $300." This court, having decided
that there was evidence which entitled the plaintiff to go to the jury, *held,*
that it could not be said that there was any "usual agreement," and that,
as the terms of the report did not indicate plainly what the effect of the deter-
mination of this court should be, there should be a new trial.

TORT for loss of services of the plaintiff's wife and child through
the alleged wrongful and negligent acts of the defendant as set
forth in the declaration printed below.   Writ dated July 14, 1904.

The declaration was as follows:

"And the plaintiff says that on or about April 2, 1903, the de-
fendant extensively advertised a food preparation of malt and
hops known as 'Malt Nutrine' as being manufactured and pre-
pared by the defendant with great care and as being compounded
in such a manner that the same was extremely healthful and
nutritious for women and children requiring nourishment and
strength.

"And the plaintiff says that on or about said date, relying
upon such representations, the plaintiff purchased a bottle of
said 'Malt Nutrine' and had the same given to his child, John
Joseph Roberts, the plaintiff's servant, and to his wife.

"And the plaintiff says that said 'Malt Nutrine' was so improperly and negligently compounded by the defendant that the same contained poisonous and deleterious substances so that when the contents of said bottle, purchased by the plaintiff as aforesaid, was given to the child and wife of the plaintiff, as aforesaid, the said wife and child of the plaintiff became suddenly and terribly ill and suffered great pain of body and mind from the effects of which the said child of the plaintiff, as aforesaid, died and from the effects of which the wife of the plaintiff, as aforesaid, has been caused and will be caused to suffer great pain of body and mind and has been permanently injured.

"And the plaintiff says that the injury and death to the plaintiff's child, as aforesaid, was caused by the negligence and improper compounding of said 'Malt Nutrine' by the defendant in consequence of which said bottle of 'Malt Nutrine' contained poisonous and deleterious substances. That by reason of said injuries to the plaintiff's wife and child, as aforesaid, the plaintiff has lost the services of his said child and has lost and will lose the services, comfort and assistance of his said wife and has been put to great costs and expenses for medical services and attendance all to his great damage."

In the Superior Court the case was tried before *Morton*, J. There was an answer in abatement on the alleged ground that the action was not brought properly in the county of Suffolk. This was overruled by the judge and the defendant excepted. The facts which could have been found upon the plaintiff's evidence are stated in the opinion.

The defendant offered no evidence. The judge ordered a verdict for the defendant, and reported the case for determination by this court. After a statement of the evidence, the report of the judge closed as follows: "This being all the material evidence I directed a verdict for the defendant and under agreement of the parties I report the case for the consideration of the Supreme Judicial Court under the usual agreement. It is agreed that if judgment should be entered for the plaintiff it is to be for the sum of $300."

*O. Storer,* for the plaintiff.

*E. F. McClennen,* for the defendant.

SHELDON, J.    While there may be no inherent difficulty in main-

taining an action of tort upon a false warranty (*Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 274, and cases cited), it yet remains true that there cannot be a warranty where there is no privity of contract. It cannot be found that there was a particular contract where there was no contract whatever. As there was here no contractual relation between the plaintiff and the defendant, the action cannot be maintained upon the ground that there was any warranty by the defendant of the good qualities of its mixture. *Davidson* v. *Nichols,* 11 Allen, 514, 516, 517. Nor did the plaintiff state such a cause of action. His declaration is in tort.

There was evidence that the defendant had by advertisements represented that its mixture was healthful, free from all injurious substances, beneficial to women and children and to those needing strength and nourishment, and that it was compounded with great care. These representations could be found to have been made as of the defendant's own knowledge. It could be found that the plaintiff had seen some of these advertisements, and we cannot say that the jury might not have found that his purchase of a bottle of the mixture was upon the faith of and in reliance upon these representations. There was also evidence, although meagre, tending to show that this bottle had been put upon the market by the defendant and had come from it through a wholesale dealer to the druggist who sold it to the plaintiff. It also could be found that the sickness of the plaintiff's wife and child was due to ptomaine poisoning, caused by the contents of this bottle, though as to the last point it is true that the evidence was but meagre. Still it was for the jury to pass upon. If this sickness was due to ptomaine poisons contained in a bottle which had come from the defendant, there was evidence of the falsity of its representations.

If these facts were found in accordance with the plaintiff's contention, there might have been a verdict in his favor. If the defendant made such representations as of its own knowledge, and put its mixture upon the market to come through wholesale and retail dealers to the ultimate consumers, who in reliance upon such representations bought and drank the mixture in the manner intended by the defendant, these representations must be regarded as continuous, intended to be accepted and relied on by all who finally should purchase the article for their own consumption. This rule often has been declared. *Wellington* v. *Downer Kerosene*

*Oil Co.* 104 Mass. 64. *Norton* v. *Sewall,* 106 Mass. 143. *Bishop* v. *Weber,* 139 Mass. 411, 417. *Thomas* v. *Winchester,* 6 N. Y. 397. *Blood Balm Co.* v. *Cooper,* 83 Ga. 457. *Langridge* v. *Levy,* 2 M. & W. 519. *George* v. *Skivington,* L. R. 5 Ex. 1. Here, as in *Thomas* v. *Winchester,* 6 N. Y. 397, the sale was made by the defendant, if the facts above stated were established, to a dealer in drugs who was expected to put it upon the market so that it finally would be sold to some one for his own consumption, and the defendant's representations must be treated as made to that ultimate consumer, upon whom the injurious consequences of their falsity would fall, and might cause either death or serious bodily harm. This is the rule stated in the well considered case of *Tomlinson* v. *Armour & Co.* 46 Vroom, 748. Indeed the case at bar is stronger for the plaintiff than that last cited, for in that case the defendant was held upon the implied representation that its ham was wholesome and fit for food, while here there were express representations by the defendant as to the excellent qualities of its mixture.

But it is claimed that these representations should not be given an indefinite continuance, and that this bottle either was or might have been so long out of the possession of the defendant that its representations ought to have been regarded as no longer in force when the plaintiff made his purchase. There may be a lapse of time after which this fairly could be maintained; but it cannot be held as matter of law that such was the case here. The bottle was corked with a stopple which had to be pulled out by the plaintiff after the seal over it had been removed by his wife. This would indicate that any outside contamination had been guarded against, and might tend to relieve a purchaser from any fear of such contamination. This contention presents only a question of fact.

In our opinion the case should have been submitted to the jury. See besides the cases already cited, *Gould* v. *Slater Woolen Co.* 147 Mass. 315; *Farrell* v. *Manhattan Market Co.* 198 Mass. 271; *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341; *Gately* v. *Taylor, ante,* 60; *Beckwith* v. *Oatman,* 43 Hun, 265; *Brown* v. *Marshall,* 47 Mich. 576; *Salmon* v. *Libby, McNeill & Libby,* 219 Ill. 421; and *Howes* v. *Rose,* 13 Ind. App. 674.

The case was reported to this court "under the usual agreement," and with the agreement "that if judgment should be entered for

the plaintiff it is to be for the sum of $300." The parties differ as to what "the usual agreement" is. It is not unusual for a report to provide for judgment in favor of one party or the other; neither is it unusual to provide for a new trial if the rulings made below are found to have been erroneous. While the agreement as to the amount of a possible judgment for the plaintiff tends strongly to support his contention, we cannot say that there is any "usual agreement." The report of a case "for determination by the full court" (R. L. c. 173, § 105) ought to indicate plainly what is to be its effect. As the case stands, we are of opinion that there should be a new trial.

No question has been made upon the answer in abatement.

*New trial ordered.*