ANNIE J. WILSON *vs.* J. G. and B. S. FERGUSON COMPANY.

Suffolk.   January 13, 1913. — March 31, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* In selling injurious food.  *Food.*

At the trial of an action against a manufacturer of pies for personal injuries resulting from ptomaine poisoning alleged to have been caused by the eating of a blueberry pie manufactured by the defendant, there was evidence tending to show that the defendant represented by advertisements that it made and sold pies which were wholesome and of excellent quality; that the plaintiff purchased from a dealer a blueberry pie which the defendant had manufactured and had sold to the dealer and that, because the pie was unwholesome, she suffered from ptomaine poisoning; that the condition of the pie was not caused by the dealer; that at times the defendant stored its surplus supply of blueberries for several months in whiskey barrels, where they fermented, that different toxins and poisons thus were developed in the mass, making the berries noxious, and that a mixing of wholesome berries with those thus tainted, a method adopted by the defendant, would not overcome the unwholesome character of the mass.  *Held,* that the question, whether negligence of the defendant caused the plaintiff's injury, was for the jury.

TORT for personal injuries alleged to have been caused by the eating of an unwholesome blueberry pie manufactured by the defendant, sold to one Stewart, and by him sold to the plaintiff. Writ dated January 27, 1910.

In the Superior Court the case was tried before *Lawton,* J. The material facts are stated in the opinion.  At the close of the evidence the defendant asked that a verdict be ordered for it.

The judge refused so to do, and the jury found for the plaintiff in the sum of $2,916.67. The defendant alleged exceptions.

*C. S. Knowles*, for the defendant.

*W. W. Clarke*, (*C. J. Muldoon*, Jr., with him,) for the plaintiff.

BRALEY, J. The jury by their verdict assessing damages must have been convinced on the testimony of the plaintiff and of her medical attendant that her serious and prolonged illness arose from toxic or ptomaine poisoning caused by eating a blueberry pie made by the defendant, and purchased from a retail dealer. A further finding, that on the morning of the day of purchase the pie had been delivered to the dealer by the defendant, and immediately placed by him in a glass case furnished by it from which the plaintiff, among other customers, had been supplied, would have been warranted. It represented by advertisements, that it was engaged in making and selling pies which were not only wholesome but of excellent quality. Apart from any expectation of pecuniary gain or apprehension of loss it was bound in their preparation to take every reasonable precaution to supply an article of food which would not be deleterious to the consumer's health. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341. *Gately* v. *Taylor*, 211 Mass. 60, 64. *Roberts* v. *Anheuser Busch Brewing Association*, 211 Mass. 449. *Crocker* v. *Baltimore Dairy Lunch Co. ante*, 177. The pie under these findings having been unwholesome, and the dealer free from blame, the remaining question is, whether there was evidence from which it could have been found, that the plaintiff's injuries were attributable to the defendant's negligence. The selection of the berries, the manner of assorting and preparing them for use, and the large volume of business transacted, are described in detail by the defendant's witnesses. The evidence, however, need not be minutely reviewed. Its essential features only are important. It seems that a well defined period of demand for blueberry pies of the defendant's brand had been established in the trade, for which it prepared by buying and keeping on hand large quantities of berries. But as they were not all used when the public appetite slackened or ceased, the unused portion for some eight or nine months, or until the succeeding season, was thereupon stored in whiskey barrels, where the extent and force of the fermentation caused the heads to burst. The jurors from common experience could have inferred without difficulty, that

the fruit as a result of the process had become merely a mass of pulp thoroughly unfit for culinary purposes, and if used it might be highly injurious, or dangerous. The decomposition moreover, according to the medical testimony, had developed different toxins and poisons, making the berries noxious. If, to neutralize or overcome these properties, the defendant, with knowledge of the qualities of the ingredients, mixed fresh berries with the product of the barrels, nevertheless the fact remained, that the pies consisted in part of fermented or decayed fruit. It therefore could not have been ruled as matter of law, that the agency of fresh berries had counteracted the poisons, and caused the compound to be healthful, and the jury, as the judge correctly held, were to determine whether the pie the plaintiff bought had been properly prepared. *Roberts* v. *Anheuser Busch Association,* 211 Mass. 449. *Salmon* v. *Libby, McNeill & Libby,* 219 Ill. 421.

*Exceptions overruled.*