## TIMBERLAND LUMBER CO., Limited, v. CLIMAX MFG. CO.

No. 4848.

Circuit Court of Appeals, Third Circuit.

Sept. 28, 1932.

Benjamin J. Jarrett, of Pittsburgh, Pa., Knox Walkem, of Vancouver, B. C., Canada, and McCook & Jarrett, of Pittsburgh, Pa., for appellant.

W. Pitt Gifford, and Gunnison, Fish, Gifford & Chapin, all of Erie, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

The Timberland Lumber Company brought this action in assumpsit to recover damages from the Climax Manufacturing Company on the warranties and promises of the Climax Company to the Timberland Company that a locomotive built by the Climax Company and sold to the Timberland Company through the Vancouver Depot Machinery Company, Limited, an independent dealer, would comply with certain requirements.

To the statement of claim, the Climax Company filed an affidavit of defense raising questions of law and averring that the statement does not disclose any claim on which a judgment could be legally entered in favor of the Timberland Company.

The District Court sustained the defense of the Climax Company, but allowed the Timberland Company to amend its statement of claim. The Climax Company again filed an affidavit of defense averring that the amended statement did not set forth a cause of action. The District Court was of the opinion that it must find in favor of the Climax Company and thereupon ordered judgment to be entered for it. The Timberland Company appealed to this court.

The Timberland Company is engaged in the lumber business. It desired to purchase a locomotive to be used for work on its timber lands. It required a locomotive that would develop sufficient power to haul fifteen cars of logs, each weighing thirty-three tons, over tracks having a grade of 3½ per cent., at a speed of ten to twelve miles per hour, in a manner that would be efficient, smooth, and without vibration.

Accordingly, the Timberland Company entered into a contract with the Vancouver Company, the independent machinery dealer, whereby the latter agreed to sell to the former a locomotive to be designed and constructed by the Climax Company according to the specifications and for the purposes of the Timberland Company. The Timberland Company agreed to pay and did pay the Vancouver Company $36,530 for the locomotive.

Thereafter the Climax Company contracted to manufacture and the Vancouver Company to purchase the locomotive for $27,600, less certain discounts. This contract was in writing and expressly excludes all agreements and understandings outside of it.

The Climax Company built the locomotive and shipped it directly to the Timberland Company. The Timberland Company avers that the locomotive has failed to meet the requirements of service in accordance with the guarantees.

Apparently, there are separate transactions of sale between the Vancouver Company and the Climax Company, and the Vancouver Company and the Timberland Company. If the two transactions of sale were separately considered, there would be no privity of contract between the Timberland Company and the Climax Company, and the Timberland Company would fail, as the ultimate purchaser in that case would buy the locomotive from an independent dealer, and the dealer, in turn, from the manufacturer. The Timberland Company concedes that the mere resale of a warranted article will not give a subpurchaser a right to sue the manufacturer or original seller for defects of quality. 2 Williston, Contracts, § 998, p. 1878; Wolstenholme, Inc., v. Randall & Bro., 295 Pa. 131, 144 A. 909. But the Timberland Company contends that it has stated an express contract between the Climax Company and itself; and it must be kept in mind that the question here is whether the Timberland Company's statement of claim discloses a cause of action against the Climax Company on which a judgment may be legally entered in favor of the Timberland Company. The

Timberland Company says that by reason of the warranties and promises made to it by the Climax Company, through the Vancouver Company, its agent for that purpose, it was induced to contract to purchase the locomotive from the Vancouver Company.

It may be unusual but it is not impossible for a manufacturer to contract independently with both a dealer and the purchasing consumer. If a manufacturer wishes for some reason of his own to guarantee his product, he can make a valid contract with a person other than his immediate purchaser, if the elements of the law of contracts are thereby satisfied.

It is true that the inducements which are promised in the case of a manufacturer contracting with a subpurchaser would not be accurately termed "warranties." A warranty in the sale of personal property is understood ordinarily to apply only between the vendor and the immediate purchaser. Pennsylvania Uniform Sales Act, § 12, Act of May 19, 1915, P. L. 543 (69 PS § 121).

The Timberland Company contends that the Climax Company made to it the following promises or representations:

"1. As to the tonnage and hauling capacity of the locomotive, to wit, that it would develop sufficient power to haul fifteen cars of logs each weighing 33 tons over the plaintiff's said tracks, or a total of 495 tons, having a grade of 3½% at a speed of 10 to 12 miles per hour.

"2. That the locomotive would haul said tonnage over the said tracks efficiently and be free from vibration.

"3. That the locomotive was fit for plaintiff's use, which use had been made known to defendant."

Substantially, it is the theory of the Timberland Company that the Climax Company promised to furnish a locomotive that would meet the above requirements if the Timberland Company would agree to purchase the locomotive from the Vancouver Company. The Timberland Company did agree. The consideration for the Climax Company's promises is stated to be the agreement of the Timberland Company to purchase the locomotive from the Vancouver Company, a step that the Climax Company desired and sought for future business development.

The Timberland Company avers in its statement of claim that the Climax Company, through its agent, the Vancouver Company, expressly warranted, represented, and prom-

ised to the plaintiff that the locomotive would do certain specified work to induce the plaintiff to contract to purchase the locomotive from the Vancouver Company and that the Timberland Company relying on, and in consideration of, the Climax Company's representations, guarantees, warranties, and promises, made the agreement with the Vancouver Company to purchase the locomotive.

The claim is not drawn artistically and it is only natural that the Climax Company fell into the belief that the Timberland Company seeks to recover on the contract between the Climax Company and the Vancouver Company on the basis that the warranties were made by the former to the latter. Hence, the Climax Company points to the well-settled rule that the warranties of the seller to a purchaser does not give a subpurchaser the right to sue the original seller. Wolstenholme, Inc., v. Randall & Bro., supra; Roberts v. Anheuser-Busch Brewing Ass'n, 211 Mass. 449, 98 N. E. 95; 2 Williston, Contracts, supra, note 52. But this is not the ordinary case and the Climax Company overlooks the possibility of the manufacturer contracting with both the dealer and the consumer.

This interpretation of the claim stated by the Timberland Company is borne out by the large amount of correspondence that passed between the Climax Company and the Vancouver Company before the Timberland Company agreed to purchase the locomotive.

From that correspondence, it is evident that the Climax Company's anxiety to be assured of the sale of the locomotive by its dealer to the Timberland Company carried it further than usual. The inference that it was seeking to open a new field for its machinery is inescapable. There can be no question but that the Climax Company intended and expected the Vancouver Company to communicate its offers and promises to the Timberland Company which was unwilling to enter into a contract with the Vancouver Company until the Climax Company agreed to guarantee the locomotive. When this fact was conveyed to the Climax Company, it replied that it would guarantee the tonnage that the locomotive required would haul. This guarantee the Climax Company intended to be conveyed to the purchaser and it was conveyed to it. That was the forerunner of the voluminous correspondence between the Climax Company and the Vancouver Company relating to the locomotive.

Throughout this correspondence, the Climax Company reiterates that it is "on trial," and the procuring of the order means future

business for the mutual benefit of itself and the Vancouver Company.

It was competent for the Climax Company to make a contract outside of the scope of its usual business to promote its future. The averments of the statement of claim are sufficient to support a contract on that theory, and that being the only question in this case, the judgment of the District Court is reversed, and the cause remanded for further proceedings in accordance with this opinion.