Mason, J.
This is an action of tort. The plaintiff’s declaration is in two counts. The first count alleges that the defendant is engaged in the business of selling meat to various retail dealers who in turn sell and have sold said meat; that it was the duty of the defendant that said meat be pure and fit to be eaten; but that regardless of its duty the defendant negligently and carelessly sold meat that was dangerous and injurious; that the plaintiff in the exercise of due care purchased some of said meat, ate it, became infected and was made ill, with consequent loss of earnings and great expense. The second count set forth in more detail the facts of the purchase by the plaintiff, but in other respects the allegations are substantially the same as in the first count.
*226 The Trial Court found in favor of the defendant on the ground that the negligence of the defendant had not been proved. All other issues were determined in favor of the plaintiff. The only question before us is whether there was evidence permitting this finding. The only negligence claimed is a failure to inspect the meat in question.
The Report contains the following statement—
“There was evidence for the defendant tending to show that its. establishments were in August 1935 and had been for a long time prior thereto under the supervision of the Inspectors of the United States Bureau of Animal Industry; that no inspection is made for trichinae; that there are two’methods for detecting the presence of trichinae in pork, one being by the use of a digestive process similar to that of the human stomach and the other the nse of the microscope ; that the first method is certain bnt the second while not positive might disclose the presence of trichinae in heavily infested carcasses; that the former method is too expensive to be practicable.
‘ ‘ There was further evidence for the defendant as to the care and degree of inspection in its slaughtering hanses and the methods adopted here and elsewhere with reference to the discovery of infested pork.”
The only other statement of the evidence on which the finding is based is contained in the decision of the Trial Court as follows:
“The second may be expressed as follows: Was there negligence on the part of the defendant in the preparation and distribution of the fresh pork slaughtered by it for human consumption.
“The negligence may be aptly divided as the defendant states in its brief as follows:
“(1) In not properly examining, testing and preserving the condition of the meat for the sale thereof. •
*227 • “(2) In failing properly to examine, test and preserve the condition of the meat.
“As to this aspect of the case, the evidence before me is all from the defendant. From this evidence it appears that there are two methods for detecting the presence of trichinae in pork. One method consists in creating an artificial condition similar to that found in the digestive processes of the human stomach and intestines. The other is through the use of the microscope. By the use of the first method it can be determined with certainty whether the pork in infested or not. The method consists in taking a quantity of meat from the carcass to be examined, grinding the meat in a meat chopper, mixing it with an artificial gastric juice which is made up by adding pepsin, common salt and water in a proportion so as to simulate natural gastric juice, incubating the mixture of meat and the artificial gastric juice at body temperature for about 18 hours, stirring it from time to time with a glass rod in order to simulate the churning motion of the stomach, and decanting the fluid and centrifuging the sediment at high speed in order to bring down any parasites which may have been liberated by process of digestion and finally taking the sediment and examining it microscopically in order to determine if trichinae is present in it.
“It is obvious from this explanation that such a method while accurate would be wholly impracticable so far as the general marketing of hogs for human consumption is concerned. Each carcass would have to be treated separately and held until there was a determination as to whether there was infestation or not. The expense involved would undoubtedly destroy the present status of pork as a relatively cheap food for large masses of people. That it is an impracticable method is borne out by the fact that neither in this country nor elsewhere is there any requirement by governmental authorities as to its use.
*228 “The other method is microscopic examination. This method calls for the taking of a small portion of the muscle of the hog and compressing it between two glass slides so as to press the muscle portion into a very thin transparent sheet and examining the preparation with the aid óf a microscope. If trichinae aré present in the sample they can readily be seen with a low-powéred microscope. However the results of the use of this method are uncertain and there is no requirement either by thé Federal Government or the Commonwealth óf Massachusetts that it be pursued. The reason it is uncertain is that hógs are infested in varying degrees. Therefore a sample of muscle may or may not disclose the presence of the trichinae dependent upon the degree and localization of the infestation; About two per cent, of the hogs slaughtered for human consumption are infested and the policy of governmental agencies has been in the absencé of any known practical method to generally acquaint- the public with the facts arid advising that the only certain, method to destroy trichinae is- thorough cooking. Accordingly pamphlets are- issued from time to time through the Department of Agriculture in which the subject matter is-thoroughly discussed.
“In further support of the decision not to inspect hogs through microscopic examination it is stated that- results show about 32% of the- cases of trichinosis in Gerrnany have resulted from the - consumption of pork which had been inspected by German Microscope Inspectors and certified by them, as being free from trichinae.- In other words the microscopic inspection is not a guarantee that the carcass is free.from trichinae. * * *
“In the case of Ketterer vs. Armour & Co., 247 Fed. 921, the Court said:
‘The general custom of the persons or corporations who manufacture meat products, to be sold for food, to conduct the business in a givén way, affords the *229 most satisfactory evidence in support of the conclusion that the defendant conducted its business with ordinary care. When it appears that everybody engaged in a particular business conducts it in a certain way we conclude that the defendant in conducting his business in 'the way that everybody else in the like business does, has measured up to the standard demanded by the law and exercised the ordinary care of prudent men engaged in the business/
“In Chellie vs. Cudahy Bros., 255 N. Y. 414, the Court said:
‘There is no testimony revealing any negligence on the part of the defendant. WThat breach of duty is chargeable to it. The fresh pork was prepared by the methods adopted by other packers engaged in similar business. The methods of preparation and inspection measured up to the standard demanded by the Federal Grovernment/
‘Comparatively speaking, only an infinitesimal amount of the pork sold is eaten raw. It seems to follow logically that it is unfair to impose the liability of an insurer upon the meat packer through the implication of a warranty that pork is fit for human consumption in a raw state. This is especially true in view of the fact that the danger of infection can be reduced almost to the vanishing point by ordinary cooking methods. Fresh pork is not ordinarily intended to be eaten raw. The warranty should be applied only to food used in the usual rather than in the unusual and improper manner. We are satisfied that the defendant cannot be held liable either for negligence or for breach of the implied warranty. ’ ’ ’
In this Commonwealth in cases involving negligence in the manufacture and sale of food products, the question has been uniformly treated as a question of fact. See Wilson v. Ferguson Co., 214 Mass. 265; Tonsman v. Greenglass, 248 Mass. 275; Doyle v. Continental Baking Co., 262 Mass. 516; Richenbacher v. California Packing Corp., 250 Mass. 198; Sullivan v. Manhattan Market Co., 251 Mass. 595.
*230 Actions of contract based on breach of warranty have no bearing on the question before us. Such cases do not require proof of negligence. See Holt v. Mann, Mass. Adv. Sh. (1936) 669, (1935 A. D. R. 285), and cases cited therein.
We find no prejudicial error and the Report must be dismissed.