Hibbard, P. J.
The finding of the Trial Judge in this case was as follows:
“This was an action of contract or tort, the plaintiff alleging that on or about March 18, 1936, the plaintiff purchased some pepperoni, a certain kind of sausage, from the defendant; that the defendant was conducting a retail market and that the said food was impliedly warranted fit for human consumption, and that the said food product contained a stone, and that when she ate some of the sausage, the stone came in contact with her teeth, and her teeth were injured. The answer of the defendant is a general denial and a claim of contributory negligence. The father of the plaintiff testified that he went to the defendant’s market and asked for some dry sausage, and that the sausage here in question was produced and sold to him by a saleslady in the defendant’s market; that he brought the sausage home and that on the following day it was cut in small pieces or slices and placed on the table; that the plaintiff while eating one of the pieces, was heard to utter an exclamation; that upon examination it was found that she had bitten into a stone which was imbedded in the sausage. The witness further testified that the following day, he went to the defendant’s market and notified the defendant of the accident and that the defendant gave him some papers with the name of the alleged manufacturer of the sausage upon them.
The plaintiff testified that she cut the sausage in question in pieces or slices and placed it on the table, and that while eating one of the pieces, she bit into a stone imbedded in the sausage; that she felt a sharp pain and made an outcry; that a corner of an upper center tooth was found to be broken from the contact with the stone. Plaintiff further testified to pains and as to a visit to a dentist. In cross-examination, plaintiff testified that she is sixteen years old and that she did not purchase the sausage, and she did not furnish money for the purchase of the sausage; that she lived in her father’s house and was supported by her par *224 ents; that there was at the time of the accident, a cavity in the same tooth which had later been filled, but that no repair had been made to the broken part of the tooth.
Anthony Mocea testified that he is a dentist, practising in Worcester; that he saw the plaintiff some time in March; that a chip was found to be broken off an upper center tooth, and testified as to the proper methods of repair to the damaged tooth. Witness also testified that the nerve in the tooth, in his opinion, had received some injury on the shock of the contact of the stone. In cross-examination, witness testified that he could not state for a certainty whether the plaintiff’s discomfort was caused entirely by the injury or to some extent by a cavity existing in the tooth. Witness also testified in cross-examination that injury to the nerve might be caused by a cavity in the tooth.
Leo H. Lavien, called by the defendant, testified that he had examined the plaintiff and agreed substantially with the former witness as to the nature of the injury. This witness testified that in his opinion, the injury to the nerve, if any existed, might be caused either by the shock of the accident or by the cavity existing in the tooth. Witness- further testified that without X-ray and other tests, it was not possible to state whether there was any injury to the nerve.
Helen Francis called by the defendant testified that she was a saleslady in the market of the defendant; that the plaintiff’s father came to the market and that she waited on him; that he asked for dry sausage; that she sold him Pepperoni and that she was employed by the defendant in the market.
Upon all the evidence, I find that the sausage was purchased by the plaintiff’s father for himself and for his family for good; that it was not purchased under any trade name and that the sausage in question was selected for the plaintiff’s father by the agent for the defendant. I find that the plaintiff’s father acted as agent for the plaintiff and for his entire family in purchasing the food.. I find that the plaintiff’s father gave due and sufficient and seasonable notice to the defendant of the unfitness of the food and of the injury caused thereby.
*225 Certain requests for rulings were filed by the defendant at tbe close of the evidence and before the final arguments. I decline to rule as requested in No. 1 and 2 as they are inconsistent with the evidence and with the facts found by me on the evidence. I rule as requested in Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, but find that the rulings are not applicable to this ease. I decline to rule as requested in No. 13. I rule as requested in Nos. 14 and 15. I find for the plaintiff and assess damages in the amount of two hundred dollars.”
This case is before us by reason of the refusal of the Trial Judge to give the requests filed by the defendant numbered 1, 2 and 13. They were as follows:
“(1) On the law and the evidence the plaintiff is not entitled to recover because:
(a) There is no evidence of any contractual relationship between the plaintiff and the defendant.
(b) There is no evidence of any warranty either expressed or implied running from the defendant to the plaintiff.
(c) There is no evidence that the food was purchased from the defendant by the plaintiff or by anyone acting as her agent.
(d) There is no evidence that notice of the breach of warranty was given within a reasonable time after the plaintiff knew or should have known of the alleged breach of warranty.
(e) The evidence is that the food was purchased by someone other than the plaintiff.
(f) The evidence is that the purchaser of the food was not acting as agent of the plaintiff at the time of the purchase.
(2) In the absence of any express warranties the plaintiff cannot recover unless she or her agent expressly or by implication made known to the defendant the particular purpose for which the food was required and unless she relied on the defendant’s skill or judgment.
(13) Where a person purchases goods as agent for a disclosed principal, such person cannot recover from the seller for a breach of an implied warranty.”
*226 Beduced to simplest terms, the issue in this case is whether or not there was any evidence of a contractual relationship between the plaintiff and the defendant, either directly or through the former’s agent with an incident warranty.
We treat the requests in inverse order, assuming that the 13th accurately states a legal principle. It is clearly inapplicable. In the case at bar no person purchased goods as an agent for a disclosed principal. The Trial Judge is under no obligation to give a requested ruling based upon a state of facts not appearing in the case.
The request numbered 2 was rendered inapplicable by the finding of the Trial Judge. The general finding imports .a subsidiary one that the purpose for which the sausage was purchased was made known by implication at least to the defendant. There is a specific finding that the purchaser relied upon the judgment of the defendant.
This leaves for consideration the request numbered 1. In conformity with the Buies of the District Courts there are six specifications. It has been argued by the defendant that if any one of said specifications is not supportable, the entire request fails. It is necessary we dispose of this argument at once.
The requirement of specifications as found in Buie 27 is sound in theory in that thus all the issues of the case are clearly brought before the court for its consideration.
A recent case—Clifford Shoe Company vs. United Shoe Machinery, 1937 A. S. 391, 395 — is authority against the construction argued by the defendant. In that case there were three specifications. In the opinion they are separately discussed and treated as if each raised a separate question. We must hold this to be the correct principle.
This reduces the issue to the simple one of agency. It has been said (Roberts vs. Anheuser Bush Brewing Asso *227 ciation, 211 Mass. 449, 451) “While there may be no inherent difficulty in maintaining an action of tort upon a false warranty (Farrell vs. Manhattan Market Company, 198 Mass. 271, 274), it yet remains true that there cannot be a warranty where there is no privity of contract. It cannot be found that there was a particular contract where there was no contract whatever. As there was no contractual relation between the plaintiff and the defendant the action cannot be maintained upon the ground that there was any warranty by the defendant of the good qualities of the mixture. Davidson vs. Nichols, 11 Allen 514, 516, 517. Nor did the plaintiff state such a cause of action. His declaration is in tort.
In Gearing vs. Berkson, 223 Mass. 257, a sale of pork was made to a man through his wife as agent. As to the wife’s recovery, the Court said “The difficulty with the case is that there was no contractual relation and hence no warranty. The only sale was that made to her husband through her as agent. The implied warranty, or to speak more accurately, the implied condition of the contract to supply an article fit for the purpose required is in the nature of a contract of personal indemnity with the original purchaser. It does not ‘run with the goods’.”
Unlike Cleary vs. First National Stores, Inc., 1935 A. S. 1535, there was here no evidence that the employee of the defendant knew the purchaser had a family of children.
There was evidence that to the knowledge of the defendant the sausage was purchased as an article of food and that there was reliance upon the recommendation of the defendant in buying the particular kind of sausage. The case thus falls clearly within G. L. c. 106 §17 to the effect that there was ah implied warranty' that the sausage was fit as food. There was also evidence of the breach of this warranty. On the other hand, an action for breach of war *228 ranty can only be brought by a party to the contract. This plaintiff was not in that category. The father bought the food and the plaintiff had no title or interest in it except what was derived from her father. It is obvious- that the contract cannot be split into as many parts as there were consumers of the food. There is here no question of the rights or liabilities of an undisclosed principal. The question of agency is open under the general request for a ruling. • The only possible ground for giving the plaintiff a finding in her behalf would be to hold that the head of a household in which there are minor and dependent children is the implied agent of such dependents and minors. We find no case either in this jurisdiction or elsewhere to support such a view of the law. Accordingly there must be a finding of prejudicial error.