**MAHONEY, Plaintiff, v. SHAKER SQUARE BEVERAGES, INC., a Corporation, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 607194.   Decided November 29, 1951.

Kitchen & Messner, Cleveland, for plaintiff.
Griswold, Kapp & Johnson, Cleveland, for defendant.

## OPINION

By MERRICK, J:

Plaintiff contends she was employed in the household of the purchaser of a case of ale. While removing one of the bottles from the case carton, one of the bottles exploded, injuring the plaintiff.

Plaintiff's complaint is brought against the retailer of the ale which was manufactured and bottled in Canada under the name "Black Horse Ale."

The theory of plaintiff's case is bottomed upon a claim of implied warranty. Defendant demurred on the ground that no cause of action was stated. This raises two very interesting questions:—

(1) Was there an implied warranty by the retailer for the benefit of the purchaser such as would embrace a right of action growing out of damages occasioned by the unexplained explosion of the bottle?

(2) If there was such warranty, did it extend to include the servant in the household of the purchaser?

In recent years, great confusion has arisen in the attempted application of these theories, especially the one concerning the basing of a claim upon the contention that something dangerous was contained in a package of food or drink which passed through the hands of the retailer unnoticed or not possible of being noticed upon inspection and into the hands of the purchaser who was injured in its use in the ordinary and accepted way or was injured by the consumption of some portion of its contents.

Most of such confusion comes from an interpretation of or the application of the pronouncement in the year 1927 in the 4th Syllabus of the case of **McMurray v. Vaughn, 117 Oh St, 236**, which reads as follows:—

"Where a dealer sells an article of merchandise in the original package as it comes from the manufacturer, and the customer buys it knowing there has been no inspection by the dealer, there is no implied warranty, and, in the absence of an express warranty or representation, such dealer is not liable to the purchaser for damages caused by any deleterious substance in such merchandise, the presence of which he had no knowledge."

A casual reading of this declaration of the law of the case would lead to a first impression that it was dispositive of the question in the instant case. However, a reading of

the opinion in the case, written by Judge Matthias, gives some explanation for the theory set forth, and leads one to believe that, while the syllabus and opinion are to be considered in the light of the facts before the court in that particular case, there is much explanation and elaboration necessary to avoid the adoption of those theories as the controlling law of Ohio today.

In the McMurray case, supra, fertilizer was purchased from a retailer and shipped on such order direct from the manufacturer to the purchaser without passing through the hands of the retailer. The purchaser contended that he used the fertilizer with the result that it killed his crop, rather than enhancing its growth, due to the fact that the bags of fertilizer contained some foreign substance which remained as a result of carelessness in not cleaning them after such substance had been previously contained in such bags. The retailer sued the purchaser on an account for the price of the merchandise. The purchaser cross-petitioned and pleaded a cause in tort for the injury sustained. Much of the opinion of the court is contained in a discussion of the error of permitting the defendant to set up a "counter-claim" in tort in an action which arose out of contract. On page 241 of the opinion the court recites that in that case there were no averments of warranty, express or implied, and the defendant's averments were only such as constitute a cause of action in tort and no reliance upon a cause of action **ex contractu.** The court then follows with the most interesting dictum in the case and the one which explains the reasoning and ultimate decision of the court. On page 242 of the opinion is contained this language:—

"The defendant's cross-petition not only set out a cause of action in tort, but it failed to state any cause of action in contract. If defendant had attempted to set up an action upon contract, **then the provisions of the uniform sales act would apply thereto."** (Emphasis ours.)

There is much additional dicta in the opinion on the subject of the retailer's liabilty where the goods are sold in the original package prepared by the manufacturer and not possible of inspection by the retailer. To these expressed opinions and conclusions, the text writers and later decisions have directed their criticisms mostly upon the side of the theory that the law laid down in the McMurray case is not to be adopted as a general rule but is rather to be criticised as going too far in declaring a doctrine that should be closely confined as the law of the case. Other versions seem to indicate that the trend is away from the theory of that case and that modern trends, customs and usages have compelled

a change in the application of the old common law theory that there could be no warranty without a privity of contract directly between the party producing the goods and the one using the same.

Within a few months after the decision in the McMurray case, A. C. Brightman, Professor of Law, Western Reserve University, presented an analysis and criticism of the opinion and the statement of the law contained in the syllabus. The professor's attack upon the reasoning of the court is contained in Volume 1 of the University of Cincinnati Law Review, page 461. It concludes with the trite statement that the rule of law laid down in paragraph four of the syllabus of the case does not represent the law in any Sales Code state.

Many courts have distinguished cases involving the principle of law since the decision in the McMurray case and a few have directly and inferentially questioned its soundness. Still others have indicated that parts of the opinion and the fourth paragraph of the syllabus must be considered as mere dicta when weighing its legal impact. **Sicard v. Kremer, 133 Oh St, 291; Wolfe v. A. & P. Tea Co., 143 Oh St, 647; Dow Drug Co. v. Nieman, 57 Oh Ap, 199; Goljatowska v. Albrecht, 17 Abs, 294.**

In the opinion in the case of Goljatowska v. Albrecht, supra, at page 295, Judge Stevens makes the following observations in reference to the decision in the McMurray case:—

"A close scrutiny of that case, however, leads us to the conclusion that, notwithstanding some obiter dicta observations therein, it is not authority for the position taken by the defendant in error . . . . We are aware of a diversity of opinion among courts of last resort in the different states, as indicated in the opinion of Judge Matthias in the McMurray case, supra. Washington and Kentucky are aligned with those states holding that there is no implied warranty either as to fitness or merchantability where dairy food is sold in original packages as received from the manufacturer, without any representation upon the part of the seller . . . . There is another line of cases, however, holding that where a sale of food for human consumption is made, such sale being in sealed containers, where no opportunity of inspection is given to the retailer, yet the retailer is liable upon his implied warranty of merchantability if the artcle sold contains a deleterious substance and damage results therefrom."

In the case of Dow Drug Co. v. Nieman, supra, the syllabus makes the following statement as the law of the case:—

"In the sale of a cigar there is an implied warranty of merchantability by virtue of §8395 **paragraph 2, GC,** although the cigar is in a sealed container under a trade name; and

where the vendee is injured as a result of an explosion of such cigar an action will lie against the immediate vendor."

On page 199 of the opinion in this case, Judge Matthews discusses the McMurray case in the following comment:

"It is true that there appears in the opinion expressions to the effect that there is no implied warranty by a dealer who sells articles in the original packages as they come from the manufacturer, where the buyer knows there has been no inspection by the dealer. This statement is carried into the syllabus. No reference whatever is made to §8395 GC, and an examination of the briefs filed in the case shows that the question was not presented to the court in any way. The Supreme Court has frequently announced that the expressions in their opinions must be regarded as the opinions of the judges who wrote them, the concurrence of the other members of the court being limited to the law as stated in the syllabus, and that as to the latter it must be limited by the facts, and that when obiter creeps into a syllabus it must be recognized and so considered. **Heater Co. v. Radich, 128 Oh St, 124; B & O. Rd. Co. v. Baillie, 112 Oh St, 567."**

Continuing further on page 200 Judge Matthews writes:—

"We are confronted in this case with what we consider the plain language of the statute, on the one hand, and this obiter dictum on the other. Under such circumstances it seems to be our duty to follow the statute. We are supported in our belief in the correctness of our construction of the statute by the decisions in other jurisdictions and by the decision of the Court of Appeals of the Ninth Appellate District in Goljatowska v. Albrecht (supra), after the decision in McMurray v. Vaughn, (supra). In that case (Goljatowska v. Albrecht) the court reached the conclusion that the expression on this subject in McMurray v. Vaughn was obiter dictum and, therefore, not controlling, although, of course, entitled to great weight, and, after considering the statute in the light of all the authorities, held that it imposed an implied warranty of merchantability, notwithstanding the dealer bought the goods from the manufacturer in a sealed container, under a trade name, and sold them in the same condition without any opportunity for inspection. We reach the same conclusion."

**O. Jur.** in **Volume 35**, at **page 879**, discusses the McMurray case as follows:—

"There is a dictum in an important Ohio case to the effect that 'where a dealer sells an article of merchandise in the original package as it comes from the manufacturer, and the customer buys it knowing there has been no inspection by the dealer, there is no implied warranty, and in the absence

of an express warranty or representation, such dealer is not liable to the purchaser for damages caused by any deleterious substance in such merchandise, of the presence of which he had no knowledge.' There is nothing in the Sales Act that lends sanction to such a statement. No exception is made in §8395 (1) and (2) GC, either in case of goods sold in original packages or in case of dealers in their sale of such goods. The element that is required is reliance upon the seller's skill and judgment. The only basis upon which the dictum can stand is that in such cases a buyer is never justified in relying upon the seller's skill or judgment. Obviously, for the effective protection of buyers, it is quite as necessary to hold the seller in these cases as in fact situations where there is an implied warranty of fitness for a particular purpose, when the defect is a latent one not discoverable by the seller or buyer at the time of the bargain, and in cases where there is a warranty of merchantability which is not lived up to because of a similar defect. It is quite as hard in such cases for the seller to discover the defects as it would be in the case of goods sold in the original package. There is no injustice done to the seller, for he, in turn, has his cause of action for breach of warranty against the manufacturer or dealer who sold him the article."

Continuing in **35 O. Jur. pages 879** and **880,** we find these observations:—

"But can it be said that the buyer, under such circumstances, is not justified in relying upon the seller's skill and judgment? The dealer is certainly in a better position to know and ascertain the reliability of the manufacturer or wholesaler than is the purchaser. And is not this what the seller relies upon when he buys? He depends upon the seller to deal with the manufacturers and wholesalers or dealers who will supply an article reasonably fit for the purpose for which it was sold, whether the article be food in a can or tennis balls in an hermetically sealed container. However, if the buyer makes a selection on the basis of fitness for his particular use, it is obvious that he relies upon his own judgment, and §8395 (1) GC, would not be applicable. However, while such a choice upon the basis suggested would remove the possibility of an implied warranty for a special purpose, there is still the chance of holding the seller under §8395 (2) GC, on an implied warranty of merchantability."

To better understand the application of the facts to the statute it is necessary only to appreciate the plain meaning of §8395 (2) GC, a section of the Ohio Sales Code which has to do with conditions and warranties in contracts. The section is as follows:—

"When the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality."

In the consideration of the facts in the instant case, certain statutes sometimes referred to as "pure-food laws" must be understood and applied. The sections involved are as follows:—

**Sec. 5774 GC.** "No person, within this state, shall . . . . offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated within the meaning of this chapter.

**Sec. 5775 GC.** ". . . . The term 'food' as used in this chapter, includes all articles used by man for food, drink . . . . or condiment, whether simple, mixed or compound. . . ."

**Sec. 5778 GC.** "Food, drink, confectionery or condiments are adulterated within the meaning of this chapter, . . . . (7) if it contains any added substance or ingredient which is poisonous or injurious to health. . . ."

**Sec. 12758 GC.** "Whoever . . . . offers for sale or sells a drug, article of food, or flavoring extract which is adulterated or misbranded as the terms . . . . 'food' . . . . 'adulterated' . . . . are defined and described by law . . . . shall be fined not less than twenty-five dollars nor more than one hundred dollars."

A sale of food which is "infected" within the meaning of the Ohio pure food laws, even though the seller has no knowledge that it is so infected, violates the statute and is negligence as a matter of law. **Leonardi v. Habermann, 143 Oh St, 624; Kurth v. Krumme, 143 Oh St, 638;** Wolfe v. Great A & P Tea Co., supra; **Rubbo v. Hughes Provision Co., 138 Oh St, 178; Portage Markets Co. v. George, 111 Oh St, 775.**

Consideration is now directed to determine whether or not a bottle of ale which explodes upon ordinary handling is "of merchantable quality" within the meaning of the Ohio Sales Code. Likewise, it must be ascertained whether such bottle of ale under such circumstances contains "any added substance or ingredient which is . . . . injurious to health."

It has been held in this jurisdiction that the bottler of beverages is liable to a person injured by an explosion of the bottle on the theory of res ipsa loquitur if the evidence negatives any reasonable inference that the explosion was caused by the plaintiff or anyone else who handled the bottle after it left the control of the manufacturer and that both logic and experience support a rebuttable inference of negligence by the manufacturer while the bottle was in its possession and control. **Fick v. Pilsner Brewing Co., 54 Abs 97.** In the opinion

208

of Judge McNamee is found the following language at page 104:—

"The present trend of judicial thinking is definitely toward application of the doctrine in cases involving the explosion of bottles of carbonated beverages, where the evidence excludes any efficient cause of injury except the permissible inference of defendant's negligence. . . . Defendant's exclusive control of the causative force of an injury may be and frequently is the concomitant of his exclusive possession and physical control of the offending thing at the time of injury. But it is true also that defendant's control of the causative force of an injury may exist independently of another's exclusive possession and manual control of the offending thing at the time an accident occurs. . . . A manufacturer or processor may create and set in motion the causative force of an injury which those subsequently in possession of the offending product are powerless to control. It is difficult to perceive a difference in principle between these latter cases and those where a defendant's sole power to prevent injury, by the exercise of reasonable care, results from his exclusive possession and control of the offending thing at the time of the occurrence. In both classes of cases the defendant has exclusive control of the causative force of the injury. Whether this essential control results from manufacturing, processing or compounding a product, or inheres in defendant's exclusive possession and control of the offending thing at the time of injury would seem immaterial. In either such circumstances there is equal warrant for the application of the doctrine."

It is readily observed from this reasoning that the laibility in tort for the act of creating the danger in the bottle of beverage is laid directly at the door of the bottler and does not detach itself from him, regardless of the number of hands through which the usages of trade may pass the product. In the absence of some circumstance or fact showing actual knowledge on the part of the retailer or other dealer no liability could attach because of the manner of manufacture unless such liability is fixed by law. This requires an analysis of the Ohio pure food statutes referred to above to determine whether the sale of a bottle of ale containing gas, air or other pressure or ingredients such as would explode the bottle on ordinary handling would come within the comprehension of any of such prohibitive statutes. This leads us directly to the questions:—

Is high pressure in the bottle part of the drink when sold and if so, is it an adulteration? Is it an ingredient which

is injurious to health? Is the high pressure a component that makes the drink one which contains a deleterious substance?

If the answer to any of these questions is in the affirmative, then the bottle as sold is not of merchantable quality and the transaction would constitute a breach of warranty under the sales code.

While courts have not given much satisfaction concerning the real meaning of the word "merchantability," it has been suggested that the word connotes "medium quality" or "fair average quality." **35 O. Jur., 875.** A warranty of such merchantability is a warranty that the goods are reasonably fit for the general purpose for which they are sold. Dunbar v. Consolidated Iron-Steel Co., 23 F. (2d) 416, writ of certiorari denied in 277 U. S., 599; **Cullen v. Bimm, 37 Oh St, 236.**

As most of the reported cases concerning exploding bottles of beverages are brought in tort, there is a dearth of cases which might be relied upon as precedent. A good discussion is found in the case of **Tennebaum v. Pendergast, 55 Abs 231.** This is a common pleas court citation in the language of Judge Leach of Franklin County. A quotation of some extracts from his opinion are helpful and I draw upon them as follows:—

"While this court would not go so far as to hold that there is an implied warranty as to containers of all goods sold and would confine such warranty to the goods alone, in some cases, yet where, as here the thing purchased is a bottle of Royal Crown Cola—a soft drink or beverage the consuming or drinking of which drink is by common knowledge ordinarily from the bottle itself, the court is of opinion that the purchaser's use of both bottle and the liquid therein contained are so closely associated and related that he cannot ordinarily consume the one without at the same time handling and using the other  It is common knowledge that the drink is kept in the bottle till the purchaser wishes to consume the liquid. The bottle and the contemplated use thereof is much more closely related to the contents than, for instance, a crate and oranges therein contained. The court is therefore in agreement . . . . as to the applicability of the doctrine of implied warranty."

New York has a sales statute in form almost identical with Ohio. In its application we find the interesting case of Cooper v. Newman, 11 N. Y. S., 2nd, 319 (year 1939). In the syllabus the court holds the seller liable to buyer on ground of breach of warranty for injuries sustained by buyer of syphon bottled soda water, when one of bottles exploded a few days after delivery to her apartment as buyer approached place where

it had been stored. Some quotations from the opinion of the court found on page 320 are very pertinent here:—

". . . . The doctrine of a seller's liability for breach of warranty was for the first time extended to a defective container in Haller v. Rudmann, 2nd Dept. 249 App. Div. 831, 292 N. Y. S., 138. In that case the plaintiff sued the retail druggist from whom she purchased a bottle of alcohol. In removing the cap she cut her finger on a defective thread of the glass bottle. The opinion of the court was to the effect that the bottle was just as much a part of the sale as the contents and that the provision of the statute defining the seller's liability for breach of warranty were applicable to the container with a latent defect . . . . A syphon bottle that explodes through no fault of the user, after it is filled with aerated water is unfit for the purpose for which it was made and is unmerchantable. . . . . The fact remains that the container was an essential part of the transaction. Under the circumstances the mere fact of the explosion points to the conclusion that the bottle harbored a weak point not readily ascertainable by inspection. Here the sale was by description, the defect was wholly latent,, and inspection was impossible. In such circumstances the law casts the burden on the seller who may vouch in the manufacturer, if the latter was to blame."

Connecticut likewise has a sales statute almost identical with our own Ohio Sales Code. In 1940, the Supreme Court of Errors of Connecticut reported a case which poses the identical question at hand:—Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 Atlantic 2nd 181. The syllabus in part reads as follows:—

"Application of the statute providing that, when goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer, there is an implied warranty that goods shall be of merchantable quality, is not confined to foods, but applies to bottled goods."

In the opinion of the court at page 182 is found this language:—

"The statute makes the implied warranty that the goods are of merchantable quality a term of the contract. The furnishing of a bottle so defective that it exploded without fault on the part of the plaintiff was a breach of this warranty. There is no reason for confining the application of the doctrine to food, as claimed by the defendant."

One of the most interesting and helpful cases cited on this subject is Ryan v. Progressive Grocery Stores, 255 N. Y., 388, 175 N. E., 105. It is a unanimous judgment of six judges then

sitting (1931) in the Court of Appeals of New York. The opinion is by Judge Cardozo, then Chief Justice of that court. In the syllabus is found this paragraph:—

"Under implied warranty that bread was of merchantable quality, dealer was liable not only for price of bread containing pin, but also for special damages foreseen."

At page 106 is this language in the opinion:

"Where the buyer specifies what he wants, he can, of course, not rely upon any superior knowledge of the seller that it will serve his purposes. If he did he must give the seller some latitude of selection. But he may still insist that it must be of a quality which will pass in the market under that description, and he may rightly rely upon the seller to secure him such a quality. The result has not been different in cases where the consumer rather than another dealer has been the victim of the wrong. Thus in Wren v. Holt (1903) 1 K. B. 610, the plaintiff was made ill through the presence of arsenic in beer, which he had bought from the defendant who was not the manufacturer. In buying the beer he asked for the product of a particular firm of brewers. A recovery was upheld for breach of an implied warranty of merchantable quality as upon a purchase by description and this though there had been no reliance on the skill and judgment of the seller. Again in Morelli v. Fitch (1928) 2 K. B., 636, there was a recovery for breach of a like warranty upon a sale of a bottle of ginger ale by the keeper of a public house. The customer had asked for ale of a particular make, trusting to his own judgment rather than to the experience of the seller. Even so, the warranty of merchantable quality was held to be a sufficient basis for the recovery of damages . . . . For damages thus foreseen, the buyer has his remedy, whether the warranty is one of fitness or of merchantable quality."

Many cases raise the question as to whether or not a person injured by some article of food or other merchandise which is not of merchantable quality under the statute has a cause of action in contract for breach of warranty or whether the action is one in tort for actionable negligence. In **Kniess v. Armour & Co., 134 Oh St, 432,** at **page 441,** of the opinion of Judge Gorman is contained the following language:—

"However, the liability of Burmeister as a retailer might sound in tort as well as in contract for as has been well said the action on a 'warranty is a hybrid between tort and contract.' "

In **Yocham v. Gloria, 134 Oh St, 427,** the subject was treated in the syllabus as follows:—

"1. Under the provisions of §8395 GC, relating to the sub-

ject of warranty, a restaurant owner who supplies his customers with water for drinking purposes from his own well impliedly warrants the reasonable fitness of such water for its intended use. 2. Under such circumstances the supplying of water that is unfit for human consumption constitutes a violation of §12758 GC, of the pure food laws of Ohio. 3. Such a violation is negligence **per se**."

It seems to be the law of this state that when the ultimate consumer of goods may maintain an action in tort and one for violation of the warranty, he may choose which course to pursue or may join the two causes of action in the same complaint. Dow Drug Co. v. Nieman, supra; **Baking Co. v. Trizzino, 27 Oh Ap, 475**; Sicard v. Kremer, supra.

In the instant case it is to be especially noted that the plaintiff was not the purchaser of the bottle of ale which allegedly caused the injury complained of. She was a servant in the household of the purchaser and claims she was injured in the ordinary handling of the bottle in the course of her duties as such servant. In the strictest interpretation of the law of sales, there was no privity between her and the retailer whom she now sues.

**Sec. 12758 GC**, making it unlawful to sell diseased or adulterated provisions without making the condition thereof known to the buyer, is for the protection of persons, members of the family or guests of the buyer, who may sustain injuries by reason of eating such provisions, and its protection is not limited to the buyer alone. **Drock v. A. & P. Tea Co., 61 Oh Ap, 291.**

In Portage Markets Co. v. George, supra, the second syllabus reads as follows:—

"The violation of the pure food laws of this state by the sale of unwholesome meat is negligence **per se,** and may be the basis of recovery for damages **by the user** of said unwholesome meat, who suffers injury proximately resulting therefrom, provided **the user** is not himself guilty of negligence, in the care, preparation, cooking or in any other manner which contributes directly to his injury." (Emphasis supplied.)

In Rubbo v. Hughes Provision Co., supra, the second syllabus reads as follows:—

"A cause of action arises in favor of **the injured party** against one who sells provisions in violation of §12760 GC, where such sale is made to a husband who takes the provision home for preparation and cooking, and a member of his family suffers injury proximately resulting from such sale, there being no contributory negligence on the part of the injured party. (Emphasis supplied.)

A similar decision is found in the syllabus of **A. & P. Tea Co., v. Hughes, 131 Oh St, 501.**

In **Sewing Machine Co. v. Feisel, 28 Oh Ap, 152,** the second syllabus is as follows:—

"Manufacturer of electric sewing machine is liable to members of family in buyer's home irrespective of contract, for negligence in failure to use ordinary care in manufacture and inspection to end that article may be properly insulated, since danger to members of family from defective appliance should be foreseen."

Liability of bottle making company for injuries to waitress on soda bottle's explosion held for jury under evidence of inadequate inspection. Liability may follow, though privity is lacking. Smith v. Peerless Glass Co., 259 N. Y., 292, 181 N. E., 576.

Where Coca-Cola was ordered and paid for by plaintiff's friend, bottled beverage consumed by plaintiff was a gift and carried with it title authorizing recovery for injuries from broken glass therein on manufacturer's implied warranty relative to purity of drink, Coca-Cola Bottling Works v. Lyons (Mississippi Supreme Court), 111 Southern 305.

In the case of Roberts v. Anheuser-Buesch Brewing Assn., (Supreme Court of Massachusetts) 98 N. E., 95, we find the following syllabus:—

"Where one buys a mixture from a druggist, who has procured it through a wholesale house from the manufacturer, and in doing so realies upon the manfacturer's advertisement representing, as of its own knowledge, that the mixture is healthful and harmless, and where the plaintiff's family is poisoned through using the mixture in the manner intended, he is entitled to recovery against the manufacturer in an action in tort; such representations being regarded as continuous, and intended to be relied on by all persons, down to the ultimate consumer."

Consolidating all of the theories cited herein and applying them to the facts pleaded in the instant case, this court has arrived at the following conclusions:—

1. A bottle of ale which contains pressure or any other ingredient which causes it to explode upon ordinary handling is a dangerous instrumentality.

2. It is not of merchantable quality.

3. It is adulterated because it contains an ingredient injurious to health.

4. Its sale is a breach of warranty under the Ohio Sales Code.

5. Its sale is an act of negligence in violation of the Ohio

pure food law which bans and punishes the sale of adulterated food or drink.

6. A cause of action for breach of warranty lies against the retailer.

7. A cause of action for negligence lies against the retailer.

8. The liability in either contract or tort extends to a member of the household of the purchaser.

9. A servant is a member of the household.

10. The causes in tort and in contract may be pleaded in the same action.

The demurrer to the second amended petition is overruled and defendant required to plead under rule of Court. Exceptions may be noted.