**CENTEX PAVING CO., Appellant,**

v.

**UNDERWOOD OIL COMPANY et al.,**
**Appellees.**

No. 10574.

Court of Civil Appeals of Texas.

Austin.

May 14, 1958.

Rehearing Denied June 11, 1958.

Dobbins, Howard & Smith, San Antonio, for appellant.

Baker, Botts, Andrews & Shepherd, A. J. Watkins, Houston, for appellees.

GRAY, Justice.

This is a venue case. Appellant, Centex Paving Company, is a corporation and filed this suit in Harris County against appellees, Joseph Quinten Underwood and William James Underwood who were operating as a partnership under the name of Underwood Oil Company. Phillips Petroleum Company, a foreign corporation, was also sued as a party defendant and will be referred to as Phillips.

Appellant alleged that Phillips was a resident of Harris County, that Joseph Quinten Underwood was a resident of Gaines County and that William James Underwood was a resident of Andrews County. Phillips answered to the merits. Appellees, the Underwoods, filed their plea of privilege which at a nonjury trial was sustained and the cause was transferred to Andrews County as to appellees "only, and as to no other defendants." Phillips did not appeal.

Appellant alleged: that it was awarded a contract to do construction work on streets and roads in Andrews County; that in doing that work it used motorized equipment operated with petroleum products consisting of diesel fuel and the like; that Underwood Oil Company was the distributor in Andrews County for Phillips' petroleum products; that Phillips solicited appellant to use its products and to purchase the same through Underwood Oil Company; that Phillips and Underwood Oil Company knew the purpose for which the products would be used and that both expressly and impliedly warranted that the diesel fuel furnished would be the best and top grade of diesel fuel and that its sulphur content would be less than ½ of 1 per cent; that an inferior grade of diesel fuel was furnished and that it contained in excess of ½ of 1 per cent sulphur content causing appellant to suffer an unusual amount of trouble and breakdowns in its equipment.

Appellant alleged that Phillips

"* * * is a foreign corporation doing business under a permit issued to it by the State of Texas. That its residence in Texas is in Houston, Harris County, Texas, where one of its principal offices and places of business in Texas is located."

Appellant's petition was in three counts. One count alleged express and implied warranties, one alleged fraud and one alleged negligence.

A joint and several judgment for damages against Phillips and appellees was prayed for.

At the trial, by stipulation, the issues raised by the plea of privilege and the controverting affidavit were narrowed to two:

1. Whether Phillips is a resident of Harris County, and

2. Whether a cause of action against Phillips is shown.

It was also stipulated that appellees were proper parties to the suit.

Phillips was incorporated in the State of Delaware and it appears that its main office is in Bartlesville, Oklahoma. However it has a permit to do business in Texas and in fact is doing business in this State. R. N. Sears testified, by deposition, that he was Assistant to the Executive Staff of Phillips and that:

"As part of my duties, it is necessary for me to be generally familiar with all internal affairs and organization of Phillips Petroleum Company and its subsidiaries, and with the organization and operation of its affairs in all of the states in which Phillips Petroleum Company operates, including Texas."

He further testified that Phillips maintains several places of business in Texas in the form of Division Offices which are operated by several of its departments and that one of such places is in Houston. Later he said that Phillips has three principal places of business in Texas from which the major portion of its business in Texas is either conducted or supervised with the exception of its refinery and other plant operations, and that one of such places is in Harris County.

■ The above testimony was stated as facts within the personal knowledge of the witness Sears and it is to be so considered rather than as the statement of mere conclusions.

There can be no question but that Phillips was selling its petroleum products in Texas.

We need not labor the question of residence of Phillips for the purpose of venue in this suit further than to apply the holding in Pittsburg Water Heater Co. of Texas v. Sullivan, 115 Tex. 417, 282 S.W. 576, 578. There Pittsburg Water Heater Company sued Sullivan, a resident of Harris County and Southwestern Bell Telephone Company, a Missouri corporation. It was alleged that the telephone company had its principal office in Dallas. The suit was filed in Dallas County and Sullivan filed his plea of privilege to be sued in Harris County. The act complained of occurred in Harris County. In disposing of the plea of privilege the court held that, for venue purposes, no distinction is to be made between a foreign and a domestic corporation and that there is no distinction between a corporation and an individual. It further said that generally a corporation is an inhabitant of the State under whose law it is incorporated but that it has a residence wherever it conducts its ordinary business and further said:

"In this state it is definitely settled that a person may maintain several residences, and that he is suable in any one of such places. And it is equally well settled that a citizen of another state may claim the benefit of being sued in any one of the residences he may occupy in Texas."

■ Under the stipulation supra we are to decide whether Phillips is a resident of Harris County. It is our opinion that it is. The authority supra fully supports our holding.

■ In any event we are to decide whether venue as to Phillips in Harris County is shown. If it is argued (as it is) that the evidence does not show that Phillips' principal office is in Harris County then certainly the evidence does show that it is doing business in Texas and that it has an agent or representative in Harris County. This being true then venue as to Phillips in Harris County exists under Exception 27 of Art. 1995, Vernon's Ann.Civ. St. Ramey & Mathis v. Pitts, 149 Tex. 214, 230 S.W.2d 211.

The evidence shows that Phillips, through its representative Farmer, solicited appellant to use Phillips' products on the job that it was doing in Andrews County; that such products would be furnished through Underwood Oil Company; that Phillips' products were used, and that diesel fuel was one of them.

Appellant's president, James J. Dailey, testified that he specified to Farmer that diesel fuel containing less than ½ of 1 per cent sulphur content was to be furnished and that Farmer so agreed.

Farmer testified that his duties with Phillips was to promote sales of its products in his area; that he solicited appellant as a customer; that he did not remember discussing with Dailey the sulphur content of diesel fuel to be furnished but that it was entirely possible that he did; that Dailey discussed with him buying top quality diesel fuel; that he presumed that if anyone was talking about top quality diesel fuel that they would be talking about a fuel with a low sulphur content. He said:

"Up until 1955, we had had, Mr. Dailey had bought from us previously, and had had no fuel problems, and the assumption was he would continue not having any fuel problems. For that reason there was no details or conversation with regard to the quality of the fuel."

He was further asked and testified:

"Q. If you had known that the diesel fuel Mr. Dailey was going to get delivered to him by the Underwood Oil Company was going to have a sulphur content of as high as .7½ per cent, would you have mentioned that fact to him? A. I would have mentioned it to our jobber.

"Q. What would you have told your jobber? A. I would have asked him if he could get a better grade of fuel.

"Q. Would you have mentioned it to Mr. Dailey? A. You have got me on a spot there. I don't know whether I would or not. It depends on the circumstances.

"Q. If you had known it was going to be above .1 per cent sulphur content, do you think you would have mentioned it to Mr. Dailey? A. I probably would have.

"Q. That would be something he ought to know, don't you think? A. I would think so.

"Q. Any operator ought to know that, don't you think? A. I would think so.

"Q. Because that might have quite a lot of bearing on all kinds of problems including the type of oil he used and everything else, isn't that right, the type of lubricating oil? A. Yes."

Appellee Jim Underwood testified that he bought furnace oil from Coltex, delivered it to appellant as diesel fuel and that it was billed to him by Phillips as furnace oil.

After unusual trouble and breakdowns occurred in appellant's equipment the product delivered to it as diesel fuel was tested and it was determined that its sulphur content was in excess of ½ of 1 per cent.

There is evidence that sulphur is a rather active chemical and that it reacts with moisture to form sulphuric acid which reacts with copper to form copper sulphide and with iron to form iron sulphide; that when sulphur reacts in a combustion engine it forms acids and gums which cause valves to stick and not work; that poor ignition results causing the engine to knock and run rough; that some reaction results between combustion and the lubricating oils, and that various types of damage result.

The kind and character of damage to appellant's equipment was testified to which damage was of the kinds above enumerated.

The witness Farmer said that a laboratory test did not tell the whole story and that operation of equipment was the best test. He expressed his opinion that appellant's officers were experienced and in position to judge results from operating equipment.

Farmer knew the purpose for which appellant was purchasing diesel fuel, he solic-

ited appellant to purchase it through appellees and they did so purchase. Furnace oil and not diesel fuel was delivered to appellant, it contained a suphur content in excess of ½ of 1 per cent, it was used by appellant and damage to its equipment resulted.

It seems clear that Farmer did not know or anticipate that furnace oil, or fuel containing a high sulphur content would be delivered to appellant, he said: "I think anyone would rather have a diesel fuel with a lower sulphur content," and that if he had known the sulphur content he would have talked to "our jobber" and probably would have mentioned it to Mr. Dailey.

■ We think that the evidence is sufficient to show a warranty, implied if not express, by Farmer that the diesel fuel purchased by appellant from Underwood Oil Company as a Phillips' product was adaptable and suitable for the purpose for which it was purchased, which purpose was well known to Farmer. United States Pipe and Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432. Oil Well Supply Co. v. Texanna Production Co., Tex.Civ. App., 265 S.W. 203, Er. dism. 37–A Tex. Jur. p. 345, Sec. 163. Such diesel fuel was not delivered and a breach of warranty occurred. 30–A Tex.Jur. p. 312, Sec. 144. Thus a cause of action against Phillips is shown.

■ Appellant alleged a joint cause of action against Phillips and appellees and by evidence, independent of the petition, has shown that Phillips is a resident of Harris County and that it has a cause of action against Phillips. Further the proof shows that the cause of action alleged against the resident (Phillips) and the non-resident (appellees) is such that the two may, and properly should be, joined under the rule intended to avoid a multiplicity of suits. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300. Atlas Roofing Co. v. Hall, 150 Tex. 611, 245 S.W.2d 477.

It is our opinion that appellees' plea of privilege was improperly sustained. Accordingly the judgment of the trial court is reversed and judgment is here rendered overruling appellees' plea of privilege.

Reversed and rendered.