Hope W. ADAMS, Appellant,

v.

BAILEY TRANSPORTATION CO., Inc.,
Appellee.

No. 13290.

Court of Civil Appeals of Texas.

Houston.

March 31, 1960.

Rehearing Denied April 28, 1960.

Herbert Finkelstein, Houston, for appellant.

Jo E. Shaw, Houston, for appellee.

BELL, Chief Justice.

Appellant sued appellee to recover the sum of $1,400, the balance alleged to be due on a contract for installing an air conditioning unit in the offices of appellee. He also sought to recover attorney's fees. The contract sued upon was in writing which contained a provision that the instrument covered all agreements between the parties and any claim of a verbal or other agreement was waived.

Appellee resisted the suit by defensively pleading that appellant represented that the 3-ton Day and Night unit installed would adequately cool the offices in the summer months and heat them in the winter months, though appellee had wanted a 5-ton Westinghouse unit, and that the unit installed failed to perform this purpose; that this representation constituted an express warranty; that in the alternative there was an implied warranty that the unit would perform the purpose for which it was pur-

chased, to wit, to adequately cool and heat appellee's offices; that there was a failure of consideration; and that appellant had represented if the 3-ton unit did not adequately cool and heat the offices, he would remove it and install the 5-ton unit at an additional charge of $250 and appellant had refused to do this. Appellee alleged also these representations were made with intent to deceive and it relied on them and was thus induced to make the contract.

By way of a cross-action appellee plead the same facts offensively, seeking a rescission of the contract and seeking to recover as damages the $200 payment it had made to appellant and $100 it had paid to have the unit removed.

Trial was to a jury. The jury answered that the unit failed to perform the purpose for which it was installed; that appellant had represented the unit would perform the purpose for which it was installed; that such representation was not made with intent to deceive; that appellant represented that if the unit did not perform such purpose he would install a 5-ton Westinghouse unit for an additional $250; that such representation was not made with intent to deceive; and that appellee had called upon appellant to install the 5-ton unit.

The court, based on the jury verdict, rendered judgment cancelling the contract, awarding appellant recovery of the 3-ton Day and Night unit, and awarding appellee judgment for $300.

The effect of the jury verdict, insofar as it may be utilized to support the judgment, is to find there was a breach of an implied warranty that the 3-ton Day and Night unit would perform the purpose for which it was installed.

While appellee briefly urges that the jury found an express oral warranty, we overrule such contention because of the provision in the written contract that all agreements not incorporated in the writing

were waived and the writing contained all the agreements between the parties. To allow proof of an express oral warranty would be to vary the terms of a written instrument. Too, appellee briefly urges the jury's finding of the agreement to install a 5-ton unit if the 3-ton unit did not adequately cool and heat its offices supports the judgment. We overrule this position because such an agreement could not in the light of the parol evidence rule be shown. Actually appellee was relying on both of these affirmative representations on the theory that they were made with intent to deceive and it relied on them and was thus by fraud induced to execute the contract. The jury finding of the absence of intent to deceive and the absence of any finding of reliance on the representation by appellee prevented any judgment on such theory favorable to appellee. The issues as to reliance were not answered as they were submitted conditioned on affirmative answers to the issues as to whether the representations were made with intent to deceive.

 While the court's judgment does not reflect on what answers it was based, we are of the view that it could only have been based on the answer to Special Issue No. 1, finding that the 3-ton unit failed to perform the purpose for which it was installed. This would be a finding there had been a breach of an implied warranty that where something is purchased for a special purpose, which fact is known to the seller, and the buyer relies on the superior knowledge of the seller to supply the article to serve such purpose, the law implies that the article will perform the purpose for which it is sold.

Special Issue No. 1 reads as follows:

"Do you find from a preponderance of the evidence that the three ton Day and Night unit installed by plaintiff in defendant's building failed to perform the purpose for which it was installed?"

The appellant objected to this issue and asked that one issue should inquire as to whether the equipment "wholly" failed to perform such purpose and another issue should inquire as to whether it only "partially" failed to perform such purpose. He urged an answer to the issue as submitted would not inform as to whether there was only partial or total failure to perform. Appellant submitted two specially requested issues. One read:

"Do you find from a preponderance of the evidence that the 3-ton unit in question adequately performed the purpose for which it was intended?"

The other read:

"Do you find from a preponderance of the evidence that the 3-ton unit was wholly useless for the purpose for which it was intended?"

Both requested issues were refused.

The position of appellant is that a purchaser may not have rescission of an executed sale for breach of an implied warranty unless the article sold is wholly useless for the purpose for which it was sold, but if it performs such purpose in part the buyer is relegated to a suit for damages.

The position of appellee is that if an article is sold for a special purpose, which fact is known to the seller, and the buyer relies on the superior knowledge of the seller, the buyer is entitled to a rescission of the contract though executed if the article does not perform the purpose for which it is sold.

 The rule in Texas, which seems well established, is that the buyer is entitled to rescission of an executed contract where there is a breach of the implied covenant of fitness of the article for the purpose for which it is sold only if it is entirely worthless for the purpose for which it was known by the seller to have been intended. Bedner v. Dunigan Tool & Supply Co., 142

Tex. 663, 180 S.W.2d 919; Southern Gas & Gasoline Engine Co. v. Peveto, Tex.Civ. App., 150 S.W. 279; Fulwiler v. Lawrence, Tex.Civ.App., 7 S.W.2d 636; Dillard v. Clutter, Tex.Civ.App., 145 S.W.2d 632, writ ref.; Norvell-Wilder Hardware Co. v. Mc-Camey, Tex.Civ.App., 290 S.W. 772; Wright v. Davenport, 44 Tex. 164; 30 Texas Law Review 341; 37-A Tex.Jur., § 311, pp. 640–643. If it is not entirely worthless for the purpose for which the seller knew it was intended, the buyer may only recover damages. 30 Texas Law Review 341.

In this case, while the evidence is conflicting, there is evidence to show that appellant during 1956 while appellee was building a small office building to be used in connection with its trucking business, was negotiating with appellee to install the air conditioning system in the office building that contained about 1,196 square feet. Appellee's president, Mr. Bailey, wanted a 5-ton Westinghouse unit that would supply cooling in months it would be necessary and heating when heating was necessary. However, appellant persuaded Mr. Bailey that the 3-ton Day and Night unit would comfortably cool and heat the offices at the appropriate times, and the contract was signed for such unit. The evidence does not reflect in detail what the installation called for, but it does reflect a cooling unit, heating unit and a 3 H.P. Air Cooled Condenser Vent were to be furnished. The contract then provides "Return air, plem. ducts thermo, etc. to make complete job." We take it that a central system requiring ducts to convey air to the various offices was called for.

Installation was made in May and the cooling unit was turned on about June 1. The evidence from appellant shows he tested the unit and it was working properly. He denies he ever had any complaint from appellee or its representatives. Some evidence has been omitted from the statement of facts. We will assume it supports appellant's position that the unit worked satisfactorily so as to comfortably cool the offices.

From Mr. Bailey and others we get testimony that the system failed to comfortably cool the offices in the summer months. There was some evidence that on occasions the temperature inside was as hot as outside. Evidence showed that appellee's representatives used electric fans. Mr. Bailey at one point testified the system reduced the temperature inside about 10 degrees. At another point he said on one occasion on the weekend when he was alone the temperature was reduced to 78 degrees. Mr. Wenzel testified that on one occasion the temperature got down to 78 degrees but most of the time it was only down to from 82 to 85 degrees. Precisely what the outside temperature was at such times we do not know, though it was testified that in Houston in the summer months the temperature was between 95 and 100 degrees.

A Mr. Collins, an air conditioning expert, testified the coil had been installed backwards and this would prevent efficient operation, though he would not say how much difference in the temperature it would make. Mr. Adams said it would not make over 1 or 2 degrees difference. Also, Mr. Collins said some of the ducts were too small. These defects were denied.

There was testimony that the unit produced insufficient heat so that appellee had to get electric stoves for the offices. There is some evidence of a leak of natural gas somewhere in the installation.

■ Appellee's position is that appellant represented the system would comfortably cool and heat the offices and this it failed to do. If the testimony of appellee's witnesses is correct, it did fail to comfortably cool and heat the offices. However, under some testimony of appellee's own witnesses the system did reduce the temperature 10 degrees. We are left in the dark as to how much the heating unit, when in use,

raised the temperature. If the system lowered the temperature 10 degrees, it would on some days, of course, cool the offices comfortably. On days when the temperature outside was 85 degrees or above it would not by itself cool comfortably but it contributed to the reduction of temperature so it might have been possible to supplement it and provide comfortable cooling. If the system could do this, it would not be entirely worthless for the purpose for which it was sold. Too, it is entirely possible that with larger ducts and a correct installation of the coil the system would further reduce the temperature. Of course, it may be that there is no practical way to supplement the system, so it would be wholly useless. Or it might be the enlargement of the ducts and correct installation of the coil would make no material difference. We are not passing on these matters. We merely mean a jury could find these possibilities did not render the system entirely worthless for the purpose for which it was sold. They might also find in the light of all circumstances the system was of so little value it was for all practical purposes of no use for the purpose for which sold.

We, therefore, hold that the trial court erred in not submitting an issue inquiring as to whether the system was entirely worthless for the purpose for which it was sold.

Appellee urges in its brief, though no motion to dismiss the appeal was ever filed, that appellant abandoned his appeal because after judgment he took the units. Appellee filed a motion in the trial court to dismiss the motion for new trial because this had been done. The trial court took the position it had no jurisdiction to dismiss the motion for new trial. Appellant's counsel wrote appellee that he would take possession of the unit and sell it (appellant had a chattel mortgage on the unit) so as to minimize any loss through delay in disposing of the property. Appellee's counsel wrote back that he could take the unit under the court's judgment. Whether this letter was received by appellant or his counsel before the unit was taken does not appear.

The case cited by appellee holding an appeal is abandoned when the validity of the judgment was recognized is a case where there was complete execution of the judgment as rendered. The other cases did not involve the question of whether an appeal had been abandoned, but involved situations where one of the parties was in some manner attacking a final judgment after having in some manner previously recognized it by accepting its benefits. An estoppel was thus created to attack such final judgment.

■ We are of the view that we cannot say under the facts as reflected by this record there was any intent to abandon the appeal. Really, the facts show dissatisfaction with the judgment denying recovery of the debt and foreclosure of the chattel mortgage on the unit. The resumption of possession for the purpose of sale, the proceeds to be applied on the debt, is consistent with the contention on appeal. Certainly there has been no complete execution of the judgment.

The judgment of the trial court is reversed and remanded.