W. S. BELL et ux., Appellants,

v.

Darden H. BRADSHAW et ux., Appellees.

No. 15680.

Court of Civil Appeals of Texas.

Dallas.

Oct. 14, 1960.

Rehearing Denied Dec. 30, 1960.

Frank Cusack, Dallas, for appellants.

Golden, Croley, Howell, Johnson & Mizell and Bradford D. Corrigan, Jr., Dallas, for appellees.

THOMAS, Justice.

W. S. Bell and wife Shirley G. Bell, defendants below, appeal from a judgment against them in favor of appellees, Darden H. Bradshaw and wife Jane D. Bradshaw, plaintiffs below, in the sum of $6,100 in a suit for damages for alleged fraud with regard to a transaction in real estate under Art. 4004, Vernon's Ann.Civ.St. perpetrated in the purchase of a residence by appellees from appellants.

Trial was to a jury on 22 special issues and judgment was rendered on the answers to the material issues of fact. Summarized, the jury answered the questions asked as follows:

A. (1) That at the time the Bradshaws purchased the house and lot from the Bells, or prior thereto, the Bells represented to the Bradshaws that the very best of materials and workmanship went into the construction of the house.

(2) That such representation was false as to: (a) the floor covering in the house; (b) the foundation and lower part of the walls; but (c) not false as to the roof.

B. That at or prior to time of purchase the Bells represented to the Bradshaws that the heating and cooling system would maintain a temperature of 80 degrees inside the house when the temperature outside was 100 degrees Fahrenheit, and would maintain a temperature of 70 degrees inside the house when zero degrees outside.

C. That at the time or prior to such purchase the Bells represented to the Bradshaws that the cooling and heating system installed or to be installed in the house was adequate to properly cool and heat the house.

D. Each of the representations (1) was made to induce the Bradshaws to purchase the house and lot; (2) was material; (3) was relied upon by the Bradshaws, who (4) would not have entered into the purchase agreement except therefor; and (5) was false.

E. The reasonable market value of the house and lot (1) in the condition in which it was delivered to the Bradshaws on November 30, 1956 (the date of the deed from the Bells) was $17,900; but (2) would have been $24,000 if same had been as represented.

F. The failure of the heating and cooling system to function as represented was not caused solely by the care, maintenance and adjustment of the system by the Bradshaws.

G. That the excessive moisture in the house at the foundation level was not caused

or brought about solely by the Bradshaws raising the dirt level.

▮ Appellants' first, second and third points of error attack the pleadings and evidence as not being sufficient to support the judgment for damages under Art. 4004. After considering appellees' long and detailed second amended original petition, we are convinced that it is sufficient to support the judgment. Appellants levelled several exceptions at this pleading, none of which seem good; furthermore, the action of the trial court thereon does not appear in the record, if the exceptions were ever presented.

As to the sufficiency of the evidence, a sharp conflict exists as to what was said, whether true or false, materiality, damage, and all elements of actionable fraud under Art. 4004. Briefly, the evidence shows:

The Bells were building a house for sale which was practically completed when the Bradshaws became interested in buying about November 1, 1956. Negotiations ensued resulting in a written contract of sale on November 7th which was superseded by a second contract of sale entered into on November 10, 1956. The purchase price of $24,900 for the property known as Lot 2, Block 6,970, Highlandwood Acres, 2509 Gladiolous Lane, Dallas, Texas, which the Bells agreed to sell to the Bradshaws as set forth in the contract of November 10, 1956, was payable partly in cash and partly with other real property owned by the Bradshaws. It seems the recognized purchase price was $21,500 in fact, after deflating the trade-in value of appellees' property. The sale was consummated on November 30, 1956. The Bradshaws moved in the house in January 1957, and have resided there since that date.

The Bradshaws contend they commenced having trouble shortly after moving into the property with the heating installation, from water leakage through the roof and through the foundation and lower walls, and from rubber tile floor covering over the concrete slab foundation in the kitchen and family room. When hot weather arrived the cooling system also failed to function properly.

The Bradshaws testified that concerning the manner in which the house was constructed they were told that the best of everything, material and workmanship, went into the house, that the house had been engineered for heating and air-conditioning equipment and that the equipment was adequate to do the job; that the heating and air-conditioning system would maintain an inside temperature of 70 degrees with an outside temperature of zero degrees, and an inside temperature of 80 degrees with an outside temperature of 100 degrees.

Regarding the rubber tile floor covering in the family room and kitchen, the Bradshaws testified that soon after they moved into the house the tile started separating from the concrete slab foundation until most of the tile had become separated and eventually had to be replaced with vinyl asbestos covering. R. E. Miller who replaced the rubber tile substantially corroborated this testimony. Perry Greenspan, a civil engineer in the construction business who has built many houses, testified that rubber tile should not be used on a concrete slab and cannot be depended upon to remain in place. In fact, the Bells offered to recover the floors with rubber tile, but the Bradshaws refused to permit it to be laid. They had the rubber tile replaced with a different material.

Regarding the leakage, appellees testified that on the occasion of each heavy rain there was water leakage into several rooms of the house around the walls at the floor level which had damaged the carpets in living room and bedroom and caused wall discoloration. Otis Davenport, a licensed real estate broker, who made an inspection and appraisal of the house, testified that it was apparent that water had been seeping all around the walls, particularly on the north side, and had damaged the carpeting in the living room and bed-

room and caused discoloration to the walls. The Bells admitted that the Bradshaws were "experiencing some seepage or leaking around the floor level", but attributed the excessive moisture in the house at the foundation level solely to the Bradshaws raising the dirt line so as to cause water to accumulate about the foundation level of the house. This the Bradshaws denied and the jury found against the Bells.

Regarding the heating and cooling system, the Bradshaws testified in great detail as to the inadequacy of the heating system in the winter and the cooling system in the summer to maintain substantially the temperature differentials represented by the Bells. This testimony was corroborated by Chester C. Young, an independent consulting engineer. He testified that he had made an extensive survey of the house, the heating and air-conditioning equipment, and the duct system, making tests and measurements concerning same and that he had made a detailed analysis based upon computations resulting from such tests and measurements. Mr. Young then testified in detail as to the inadequacies which he found in the system. In summary, his testimony indicated that the system and the duct work installed in the house were totally inadequate to properly heat and cool the house or to maintain the temperature differentials promised and that the system would have to be replaced in order to provide a system which would adequately serve the needs of the house.

Perry B. Travis, Chief Plumbing Inspector for the City of Dallas, whose duties include inspecting heating and cooling systems, testified concerning the results of an inspection which he made of the heating system in February or March of 1958, which indicated that such equipment as he found it in the house was set up in a dangerous manner, in violation of the City Building Code, and that "those little ducts" were not designed for the cooling unit installed.

Mr. Bell who is not in the construction business and had "very little, if anything" to do with the house involved, denied making any representations to the Bradshaws. Mrs. Bell built the house and handled the transaction. Mrs. Bell testified that they did not make the alleged representations as to the heating and air-conditioning, but merely described the size and type of the units which were actually installed. She did testify that she represented to the Bradshaws "that the house was engineered for air-conditioning and heating, central heating" and "that the the house was constructed of good materials and in a workmanlike manner."

Appellants attack the jury's findings that each of the representations found to be false were relied upon by the Bradshaws and that they would not have entered into the purchase agreement except therefor. Mr. Bradshaw was asked: "Would you have purchased the house had those representations not been made to you?" to which he answered: "I don't believe I would, no." Furthermore, Mr. Bradshaw testified that he had not witnessed the construction of the house, that he had never been in the construction, heating and air-conditioning or related business, that his training and education were not on those fields, that he questioned Mrs. Bell about waterproofing the adobe brick and was told that was not necessary, and that "the only thing I had to rely on" regarding the air-conditioning was what the Bells told him.

Finally, appellants complain about the insufficiency of the evidence to show that the representations regarding the heating and air-conditioning equipment were made at the time the Bradshaws purchased the property or prior thereto because the appellants contend the heating and cooling equipment had not been installed even by the time the November 10th contract was signed. While there was some uncertainty as to the dates the various representations were made by the Bells, the question was finally settled by Mrs. Bell herself when she testified that she "paid for them after they were installed". Her check for $1,017 dated November 9, 1958, in payment of the

equipment was shown to her, and then she said, this equipment "had been installed or I wouldn't have paid for it."

■ After considering the whole of the record, briefly reviewed as above, both that which is favorable to the verdict and that which militates against it, we hold that the verdict and the judgment based thereon are supported by sufficient evidence as to all vital facts under Art. 4004, V.A.C.S., and are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Therefore, appellants' first, second and third points are overruled.

· Appellants properly group and consider together their fourth, fifth, sixth and seventh points of appeal which may be stated as the error of the court in overruling appellants' motions (1) for instructed verdict at the close of all the testimony; (2) for judgment notwithstanding the verdict; (3) for new trial, as well as (4) their objections to the issues concerning statements of appellants regarding the heating and cooling system installed in the house involved herein, all because such statements cannot form the basis for actionable fraud under Art. 4004, V.A.C.S., in that:

(a) they are not statements concerning a past or existing fact especially when the size and make .of heating and cooling system as alleged to have been represented was actually installed; and,

(b) the statements were promises of something to be done in the future, and there is no "pleading, proof and finding that at the time of the alleged representation there was a then present intention of not complying" ; and,

(c) the statements were statements "of opinion of future operations and not statements as to past or present existing facts".

■ As we have pointed out, Mrs. Bell definitely fixed the date of installation of the heating and cooling equipment as prior to November 9, 1958, the date she paid for it. This cause of action is not based on any promise of something to be done in the future as to the heating and cooling installation, but upon misrepresentations as to past or existing material facts, to-wit: the capacities and mechanical capabilities of the equipment. Of course, representations that air-conditioning equipment would maintain an 80 degree temperature inside with 100 degrees outside and that heating equipment would maintain a 70 degree temperature inside when zero degrees outside do look into the future for the conclusive and ultimate test, but the capacity or capability of the equipment to produce such temperatures exists or does not exist at the time the representations are made. Appellants did not say "it is our opinion", "we think" or "we believe" or use other qualifying statements, but according to the jury made the material representations forming the basis of this suit which were false, and were made to induce the Bradshaws to rely thereon which they did to their damage.

"Actionable fraud may result from a positive representation that a plant or machine will do a certain amount of work or furnish a specified amount of heat, light or power, when made by one who is in a superior position to know the truth, injury having resulted because of reliance in the representation". 20–A Tex.Jur. p. 63.

"Material misrepresentations as to the quality of a thing which is the subject matter of the transaction are actionable when such misrepresentations induce the other party to enter into the transaction and are relied on to his damage." 20–A Tex.Jur. 61.

■ Although statements of mere opinion clearly such are not generally sufficient to form the basis of actionable fraud, this rule has many exceptions and qualifications. In fact, it seems the tendency is to hold those who practice the highly developed art of salesmanship to a stricter system of ethics than found on the horse-trading lot. With both State and Federal laws regulating and licensing brokers and salesmen, re-

quiring fair trade practices, truth in advertising and full revelation in security transactions, becoming effective and more restrictive each year, the position of the ignorant buyer who relies on the skillful seller is better than that he must always beware. "Thus it is held that when a party affirms as an existing fact material to the transaction that which otherwise might be only an opinion, the other party may reasonably treat the affirmation as a statement of fact and may rely and act upon it as such; if false, such a statement may be actionable." 20–A Tex.Jur. § 11, p. 29.

In United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432, (Syls. 4 & 9), a sales warranty case, our Supreme Court holds that representations of salesmen as to the fitness and quality of a water pipe to stand the load to which subjected were not mere expressions of opinion. Superior knowledge of seller and relative ignorance of buyer converts slightest divergence from mere praise into representations of fact.

Misrepresentations that seller's loaders and tractors would do the work of two tractors being used by buyer and would do a better and faster job, were held by our Supreme Court to be actionable as fraudulent in Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233.

Misrepresentations that a house "was well constructed" and "was perfectly sound", were actionable fraud under Art. 4004, V.A.C.S., in Passero v. Loew, Tex.Civ.App. El Paso, 259 S.W.2d 909, 911, n. r. e.

Misrepresentations to purchaser that two water wells on the land were capable of irrigating 160 acres of cotton were held by Justice Norvell to be actionable under Art. 4004, V.A.C.S. when relied upon in Culligan v. Wootton, Tex.Civ.App. San Antonio, 254 S.W.2d 155, n. r. e.

Appellants' points four through seven are overruled.

In their eighth point of appeal, appellants complain of the action of the Court in sustaining an objection to the following question propounded to the witness J. J. Foster "without further qualifications of the witness", to-wit:

"What, in your opinion, would have been in November, 1956, the fair, reasonable market value of that house?"

■■■ It is our opinion that the appellants' eighth point is not well taken because (1) there is no bill of exceptions and the record does not show what the answer would have been if the witness could have answered, (2) the trial judge did not clearly abuse his discretion in requiring "further qualifications of the witness" which was not attempted.

■■■ Appellants developed that the witness Foster is an experienced building contractor who has built and sold residences in the area of the property involved, that he knows building methods, practices, cost and values, that he knows the neighborhood of the property involved and has made a "casual inspection of it"—that he drove by the property on the morning he testified. Based partly upon the casual inspection of the house and the neighborhood and the lot, and partly upon an assumed state of facts generally describing the house, the witness answered that he could form an opinion as to the reasonable market value of the house and volunteered the unresponsive answer "that house in that section would be worth at least $25,000". Appellants argue that the volunteered valuation of $25,000 indicates what the answer would have been. But this is not necessarily so because the valuation in March, 1959, when the witness was valuing the property, is not material; the sale involved was in November, 1956. It is common knowledge that valuations of real estate in Dallas have fluctuated a great deal between November, 1956, and March, 1959, of which fluctuation we may take note. McCormick & Ray "Texas Law of Evidence", Second Edition, § 207. In fact the witness Foster in valuing the lot without objection stated that land

values have advanced. To enable us to properly pass on the admissibility of the proffered testimony "the record should show that the question would have been answered, what the answer would have been, and what was expected to be proved by the witness." 3 Tex.Jur.2d pp. 670–671; McCormick & Ray, id., § 30.

In this case, appellees developed on voir dire that the witness Foster had never been on the lot and, of course, had never been inside the house, that he had not seen the house while it was being constructed, did not know how many rooms were in the house, did not know whether it had a swimming pool, had not seen the back yard because of the high fence, had not seen the inside patios, knew nothing of the appliances on the inside of the house and did not know what materials went into the construction of the house, did not know about the plumbing and other equipment and did not know what size ducts were installed in the house in connection with the heating and air-conditioning equipment.

"Whether the person (witness to value) offered, possesses the required qualifications is a preliminary question to be determined by the trial judge * * * in the decision of this question our courts have wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse". McCormick & Ray, id., § 1401. The same text in § 1422 states: "The witness must also have a knowledge of the particular thing to be valued, where its value depends upon something peculiar to itself, such as physical condition, individual qualities or particular uses. Here, again the sufficiency of the witness' acquaintance with the thing ·to be valued must be left to the trial judge".

In their ninth point of appeal appellants complain that the answer of the jury that the reasonable market value of the house and lot in question in the condition in which it was delivered to plaintiffs on November 30, 1956 was the sum of $17,500 is so contrary to the overwhelming weight of all the evidence as to render the judgment based thereon manifestly ·unjust. We do not agree. Otis Davenport, a licensed real estate broker of considerable experience, was well qualified to give an opinion as to the value of the property in question on November 30, 1956, after he had made a thorough inspection of the house. He testified that based upon his examination and inspection of the house, with the assumption that the heating and cooling system could maintain temperature differentials represented only if the system would be replaced including equipment and duct work, and considering the defects in the house he actually witnessed, the fair market value of that house in November 1956 was $17,500. The valuation placed on the property by the witnesses, Mrs. Bell, Jack Crozier and Perry Greenspan, did not take into consideration the material defects found by the jury to exist.

In conclusion, appellants submit that under the record a remittitur of not less than $4,000 should be required. We have heretofore found that the evidence sustains the findings of the jury. That being the case the provisions of Art. 4004, V.A.C.S. clearly set forth the measure of damages which have been accurately awarded by the court in its judgment. We cannot substitute our opinion for the findings of the jury as to the critical values of the property. Therefore, we overrule appellants' prayer for a remittitur.

Accordingly, all of appellants' points of error are overruled and the judgment appealed from is affirmed.