**RUBEROID COMPANY, INCORPORATED, Appellant,**

v.

**W. P. BRISCOE and Gordon L. Briscoe, Doing Business As Briscoe & Briscoe, Appellees.**

No. 18219.

United States Court of Appeals
Fifth Circuit.
July 31, 1961.

H. T. Bowyer, Dallas, Tex., Bowyer, Thomas, Crozier & Harris, Dallas, Tex., for appellant.

Rollins M. Koppel, Carter, Stiernberg, Skaggs & Koppel, Harlingen, Tex., for appellees.

Before CAMERON and BROWN, Circuit Judges, and HANNAY, District Judge.

HANNAY, District Judge.

Appellees W. P. Briscoe and his son, Gordon L. Briscoe, doing business as Briscoe & Briscoe, a co-partnership, citizens of Cameron County, Texas, sued appellant Ruberoid Company, Inc., a New Jersey Corporation, with an office in Dallas, Texas, for damages for breach of warranty arising out of the purchase by the appellees of a quantity of appellant's material (paper known as "Jutecraft"), for use as outer wraps of permanent tree banks in citrus orchards in the Rio Grande Valley of Texas, and, in the alternative, for rescission.

Appellant denied that its agent represented unqualifiedly to Briscoe that the material manufactured by it was advertised on its label "more than waterproof," and therefore absolutely suitable for use as permanent tree banks material, and further alleged that if any such statement was made that the said Stamps was wholly without authority to make such representation, and further denied that there was any contractual relationship between them and the appellees.

The case was tried before a jury and submitted on both the theory of damages and rescission. The jury found for the appellees and assessed their damages at $9,500.00 and the Court entered a judgment for the appellees in that amount in accordance with appellees' motion for judgment which prayed for damages rather than rescission.

The appellant, by its brief and by its statement of points of appeal, raised no objection to the charge of the Court or to any rulings made by the Court during the trial of the case. Consequently, the only questions involved in this appeal are (1) whether the jury's verdict for the appellees which is based upon breach of expressed or implied warranties by the appellant in connection with the sale of the material in question is supported by the evidence; (2) whether the appellant's salesman was acting for the appellant in selling the material in question so that the appellant would be bound by his rep-

resentations which induced the sale and amounted to warranties under the circumstances; and (3) whether appellant's liability to the appellees can be avoided as a matter of law on the basis of an alleged lack of "privity of contract" between the parties.

The pertinent facts are that appellees were in the tree banking business in Harlingen, Texas; that Sterling Stamps, an authorized agent of appellant, who lived in Corpus Christi, Texas, but whose territory included Cameron County, Texas, contacted W. P. Briscoe for the purpose of selling to appellees material manufactured by appellant. Stamps was at the time employed on a salary basis but was paid a commission on his sales and was allowed an expense account. Statements by Stamps to the Briscoes were both enthusiastic and positive as to the merits of the material and were to the effect that such material was waterproof, durable, of good quality, "would do the job," and would hold the insulated material on the trees for a period of between three to five years in spite of ordinary rainfall, contact with water through irrigation, and ordinary exposure to elements of South Texas. These statements or representations made by Stamps were clear, unqualified, and emphatic, and were intended to be believed, and were in fact believed, by the appellees. So believing, they relied upon same in making the purchase of the material in question. These representations were false. These representations were not mere expressions of opinion but were warranties authorized to be made by Stamps without which the sale could not have been consummated. The printed material of appellant was shown, particularly the sample book of the material in question, and same contained the statement that the material in question was "more than waterproof." Stamps was also told in detail by appellees the purpose for which the material was being purchased and that same was to be for use out-of-doors. All of this occurred before the initial order or purchase was made by appellees. Also, before the consummation of the purchase,

Stamps stated to appellees that he would have to obtain a price quotation in the size and quantity desired by appellant's office in Dallas. Stamps then contacted by phone appellant's Assistant District Sales Manager for the Dallas District (which included the Rio Grande Valley), James C. Murphy, who was told of the contemplated use of the material to be purchased by appellees, to-wit, intended use being for tree banks. Murphy frankly admitted that he discussed with Stamps the matter of price and quantity of the material in question and the proposed use of the material. He further admited that he discussed this order with his boss at the time, C. B. London.

Neither of the appellees had ever had any previous experience which would qualify them or enable them to judge the suitability and adaptability of this type of manufactured paper for any particular purpose, and they did not have the knowledge or experience as appellant's agent had, and they relied upon the superior knowledge of the appellant with reference to the suitability and adaptability of the material for the special purpose for which it was sold, to-wit, to be used out-of-doors in tree banking.

The material in question purchased by the appellees was shipped directly from the factory from Millis, Massachusetts to the appellees in Harlingen, Texas. The billing of the purchase was arranged through the Southmost Sash and Door Company, in Harlingen, Texas, even though such company had nothing to do with selling it. The latter named company was the local sales distributor for the material in question and had some kind of a dealer's franchise for a distributorship in the Harlingen area. Southmost was paid by appellees for the amount of the material so purchased.

The paper purchased by the appellees from appellant proved to be wholly unsuitable and entirely unadaptable for the purpose for which it was sold, and within four months after the wraps were placed on the citrus groves, they were "shrinking and rotting, and just losing whatever strength they had." Stamps was invited

"to come down and look at them and naturally see what he could do to make an equitable adjustment." Stamps did make the inspection tour with appellees and acknowledged that the material in question seemed to be sagging, tearing, and it generally had the appearance of an old cardboard box which had become "wet and rotten." He sympathized with the appellees and took samples of the material and said he would bring the matter to the attention of his superiors. Stamps later advised that the samples were submitted but that his company would make no adjustment in the matter.

Many substantial citizens who had trees banked by appellees testified that the material in question showed early signs of discoloration after being placed on the trees and that shortly thereafter the material would begin to rot, tear and shred, and generally disintegrate, particularly after having come into contact with water. An engineer of approximately 50 years' experience testified that the material was not only wholly unsuitable and wholly unadaptable for the use as an outer wrap for permanent tree banks but was not suitable or adaptable to be used outside for any purpose for any extended period of time. This discoloration was shown to have occurred within four hours after being exposed to the sun.

Considering now the points involved:

■ First, the jury's verdict for appellees which is based upon breach of express or implied warranties by the appellant in connection with the sale of the material in question is amply supported by the evidence. The law in Texas is well settled "where goods are purchased for a particular purpose known to the seller at the time of the sale, a warranty of soundness and suitability will be implied." Norvell-Wilder Hardware Co. v. McCamey, Tex.Civ.App., 290 S.W. 772, 773; 35 Cyc. pp. 397–399; R.C.L. vol. 24, p. 188; Williston on Contracts, vol. 2, sec. 983. A later authority to the same effect is Adams v. Bailey Transportation Co., Tex.Civ.App., 334 S.W.2d 591, 593. It is thus seen that the jury's verdict in favor of the appellees is amply supported by the evidence.

■ The second point raised by appellant that appellant's salesman was not authorized to make the representations which induced the sale and that same, if made, were mere expressions of opinion, is likewise not supported by the evidence. Not only did Stamps have the authority express or implied, but before the sale in question he phoned Murphy, the Assistant District Sales Manager, and told him of the particular use the proposed material was to be used for and received his authorization to go ahead with the sale, but also, Murphy, in turn, took it up with his immediate superior, London, who was likewise told of the proposed use of the material as tree banking, and also both Murphy and London authorized not only the price of the material but the shape and size into which it was to be cut. Applying the rule as set out in the Norvell-Wilder case, supra, it is our opinion that since appellant had knowledge through its agents of the particular use for which the paper was purchased, it impliedly contracted that the paper was suitable for that particular use. See Fulwiler v. Lawrence, Tex.Civ.App., 7 S.W.2d 636, 637. See also Oil Well Supply Co. v. Texanna Production Co., Tex. Civ.App., 265 S.W. 203, 204, err. dism.; Johnson v. Agricultural Bond & Credit Corp., Tex.Civ.App., 114 S.W.2d 385, 388.

■ As to the question of the statements by Stamps being mere expressions of opinion, there is substantial evidence in the record to sustain the submission to the jury on this point. The Trial Court correctly charged on same. No exception was taken to the charge. The jury decided this question in favor of the appellees. In the recent case of Bell v. Bradshaw, Tex.Civ.App., 342 S.W.2d 185, 190, the court said:

" 'Thus it is held that when a party affirms as an existing fact material to the transaction that which otherwise might be only an opinion, the other party may reasonably treat the affirmation as a statement

of fact and may rely and act upon it as such; if false, such a statement may be actionable.' 20–A Tex. Jur., § 11, p. 29.

"In United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432, (Syls. 4 & 9), a sales warranty case, our Supreme Court holds that representations of salesmen as to the fitness and quality of a water pipe to stand the load to which subjected were not mere expressions of opinion. Superior knowledge of seller and relative ignorance of buyer converts slightest divergence from mere praise into representations of fact."

Certainly in this case the divergence was not slight.

The third point urged by appellant is that there was no privity of contract between the appellant and the appellees. Unquestionably, all of the negotiations in this case were with Stamps, the appellant's salesman, who, as before stated, obtained the necessary authority to quote the price and make the sale from the appellant's Assistant District Sales Manager. In the case of United States Pipe & Foundry Company v. City of Waco, 130 Tex. 126, 108 S.W.2d 432, 434, 436, certiorari denied 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579, the Supreme Court of Texas, in deciding this case, reasoned as follows:

"It is true that the manufacturer was not a formal party to the contract between the city and the contractor, nor was the city such in any agreement between the contractor and manufacturer. The city bought no pipe from the manufacturer. These were sold to the contractor, which in turn used them as per the plans and specifications of the city in constructing its line. In support of its contention, plaintiff in error invokes the familiar rule that there being no privity of contract, there is no liability to the consumer by the manufacturer where the manufacturer sells to a dealer who in turn by independent contract sells to the consumer. Looking only to the final form of the transaction under discussion, the rule is applicable. Obviously, a court may look through the form to the substance of such a situation, and proceed to judgment, not upon what it seems to be, but upon what in truth it is. Here the manufacturer, in order to secure to itself the benefits of a large sale of its pipe, induced the city by representations as to its fitness and quality, to specify same. By indirection it thus secured for itself a sale as certainly, and presumably as profitably, as if a direct contract of sale had been made with the city. Having secured the benefits, it may not now avoid the burdens of the transaction. It did not need to speak, but having done so and secured a sale of its product, the law required it to speak the truth. In form, there was one voice and another's hand that signed; in truth, 'the voice was the voice of Jacob, but the hand was that of Esau.' "

To the same effect, see Timberland Lumber Co. v. Climax Manufacturing Co., 3 Cir., 61 F.2d 391; Centex Paving Company v. Underwood Oil Company, Tex.Civ.App., 314 S.W.2d 409, err. ref.

■ Under the foregoing authorities and under the findings of the jury, under appropriate instructions by the Trial Court, it is shown that the material in question was purchased by appellees from Stamps, who, in turn, consulted another agent of the appellant, and that the appellees were billed for such material through the local distributor or wholesaler of appellant, who had no connection with the transaction or transactions in question.

It therefore follows, under substantial evidence and the established law that appellant's responsibility to the appellees attached by virtue of direct contact with appellees through its immediate agents. Appellant is not entitled to relieve itself

of this responsibility on the basis of alleged absence of formal "privity of contract."

Finding no reversible error, the judgment of the Trial Court is

Affirmed.